Matthew S. Warren (State Bar No. 230565)
Erika H. Warren (State Bar No. 295570)
Francesca M. S. Germinario (State Bar No. 326208)
24-703@cases.warrenlex.com
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile

*Attorneys for Defendant Discord Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| DISPLAY TECHNOLOGIES, LLC, | ) | Case No. 5:24-cv-00703-PCP |
| Plaintiff, | ) | **NOTICE OF MOTION AND MOTION** |
| | ) | **TO DISMISS FOR LACK OF STANDING** |
| v. | ) | **BY DEFENDANT DISCORD INC.** |
| DISCORD INC., | ) | |
| Defendant. | ) | |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on Thursday, May 16, 2024, at 10:00 a.m., or as soon thereafter as this matter may be heard, before Judge P. Casey Pitts of the United States District Court for the Northern District of California located at the Robert F. Peckham Federal Building and United States Courthouse, 280 South First Street, San Jose, California, 95113, defendant Discord Inc., by and through its undersigned counsel, will move and hereby does move under the Constitution of the United States, applicable statutes and laws, and the Federal Rules of Civil Procedure including 12(b)(1) and 12(h)(3), for an order dismissing this action for lack of subject matter jurisdiction.

Defendant Discord Inc. seeks an order finding that plaintiff Display Technologies, LLC lacks standing to bring this action, and thus dismissing this action for lack of subject matter jurisdiction.  In the alternative, because jurisdiction is a threshold issue, defendant Discord Inc. seeks an order staying the case except for jurisdictional discovery, pending resolution of the jurisdictional issue.

The motion is based on this Notice, the attached Memorandum of Points and Authorities, the concurrently filed Declaration of Francesca M. S. Germinario in Support of Motion to Dismiss for Lack of Standing by Defendant Discord Inc. and its exhibits, the concurrently filed Request for Judicial Notice in Support of Motion to Dismiss, briefing responsive to those papers, all other matters of record filed with the Court in this case, any argument at hearing of this matter, and such other materials the Court may consider.

Date:  March 29, 2024

Respectfully submitted,

Matthew S. Warren (State Bar No. 230565)
Erika H. Warren (State Bar No. 295570)
Francesca M. S. Germinario (State Bar No. 326208)
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
24-703@cases.warrenlex.com

*Attorneys for Defendant Discord Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

MEMORANDUM OF POINTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A.      The Rothschild Entities and Their Patent Litigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B.      Patent Asset Management's Licensing Discussions With Discord. . . . . . . . . . . . . . . . . . . 3

      1.      Rothschild's Initial Approach Through Symbology Innovations, LLC. . . . . . . . . . . . . . 3

      2.      Rothschild Offers a Global Deal Covering All Rothschild Entities. . . . . . . . . . . . . . . . 4

      3.      Patent Asset Management Reveals Itself as a Global Licensor of
           Rothschild Patents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      4.      Patent Asset Management Alleges Infringement of the Patents-in-Suit. . . . . . . . . . . . . 5

      5.      Patent Asset Management Commences This Action,
           Repeats Global License Offer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      6.      Mr. Rothschild Describes His Singular "Company," Patent Asset Management. . . . . . . 6

C.      Mr. Rothschild and His Companies Have Globally Licensed Their Patents Before. . . . . . . . . . 6

      1.      Mr. Rothschild's Global License to Valve. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      2.      Mr. Rothschild's Global License Covering Open Source Software. . . . . . . . . . . . . . . . 8

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I.       Display Technologies Lacks Standing to Bring This Action. . . . . . . . . . . . . . . . . . . . . . . . 10

      A.      Standing to Bring Infringement Claims Requires the Ability to Exclude . . . . . . . . . . . 10

      B.      Because Both Patent Asset Management and Mr. Rothschild Can License The
           Patents-in-Suit, Plaintiff Display Technologies Cannot Exclude Discord
           From Practicing the Patents, and Thus Cannot Bring This Case. . . . . . . . . . . . . . . . . . .12

II.      The Court Should Dismiss This Action for Lack of Standing. . . . . . . . . . . . . . . . . . . . . . . . 13

III.     If the Court Does Not Dismiss the Action, It Should Grant Jurisdictional Discovery. . . . . . . . 14

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

1

### TABLE OF AUTHORITIES

2

*Cases*                                                                       **Pages**

3

*Abraxis Bioscience, Inc. v. Navinta LLC*,
    625 F.3d 1359 (Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

4

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
    No. 16-453, 2017 WL 3668597 (D. Del. Aug. 24, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

5

*Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*,
    5 F.3d 378 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

6

*Alfred E. Mann Found. For Sci. Rsch. v. Cochlear Corp.*,
    604 F.3d 1354 (Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

7

*Am. Gen. Life Ins. Co. v. James*,
    No. 14-4242, 2015 WL 730010 (N.D. Cal. Feb. 19, 2015) . . . . . . . . . . . . . . . . . . . . . . . . 3

8

*Am. West Airlines, Inc. v. GPA Grp.*,
    877 F.2d 793 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

9

*Arbaugh v. Y & H Corp.*,
    546 U.S. 500 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

10

*Bernahl v. Eversheds Sutherland Ltd.*,
    No. 23-411, — F. Supp. 3d. —, —, 2023 WL 6796022 (N.D. Cal. Oct. 13, 2023). . . . . . . 10, 11

11

*Columbia Ins. Co. v. Simpson Strong-Tie Co. Inc.*,
    No. 23-2432, — F.3d. —, —, 2023 WL 8101932 (N.D. Cal. Nov. 21, 2023) . . . . . . . . . . . . . . 15

12

*Comm. for Immigrant Rts. of Sonoma Cnty. v. Cnty. of Sonoma*,
    No. 08-4220, 2009 WL 10692620 (N.D. Cal. Apr. 20, 2009) . . . . . . . . . . . . . . . . . . . . . . . 15

13

*De Forest Radio Tel. & Tel. Co. v. United States*,
    273 U.S. 236 (1927) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

14

*Drone Techs., Inc. v. Parrot S.A.*,
    838 F.3d 1283 (Fed. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

15

*Eon-Net LP v. Flagstar Bancorp*,
    653 F.3d 1314 (Fed. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

16

*In re Apple iPhone Antitrust Litig.*,
    846 F.3d 313 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019). . . . . 11

17

*Keene Corp. v. United States*,
    508 U.S. 200 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18

*Laub v. U.S. Dep't of Interior*,
    342 F.3d 1080 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

19

*Luminara Worldwide, LLC v. Liown Elecs. Co.*,
    814 F.3d 1343 (Fed. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES
*(continued)*

2

*Cases*                                                                    **Pages**

3

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

4

*Mollan v. Torrance*,
    22 U.S. 537 (1824) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

5

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
    626 F.3d 1222 (Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

6

7

*Paradise Creations, Inc. v. UV Sales, Inc.*,
    315 F.3d 1304 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

8

*PersonalWeb Techs., LLC v. Apple Inc.*,
    69 F. Supp. 3d 1022 (N.D. Cal. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

9

10

*Pfizer, Inc. v. Elan Pharm. Rsch. Corp.*,
    812 F. Supp. 1352 (D. Del. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

11

*Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*,
    858 F.3d 1383 (Fed. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

12

13

*Rothschild Digital Confirmation, LLC v. CompanyCam, Inc.*,
    494 F. Supp. 3d 263 (D. Del. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

14

*Savage v. Glendale Union High Sch.*,
    343 F.3d 1036 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

15

16

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*,
    402 F.3d 1198 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

17

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
    427 F.3d 971 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18

19

*St. Clair v. City of Chico*,
    880 F.2d 199 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

20

21

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
    563 F.3d 1271 (Fed. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

22

*Urban v. Tesla, Inc.*,
    No. 22-7703, — F. Supp. 3d. —, —, 2023 WL 6796021 (N.D. Cal. Oct. 13, 2023) . . . . . . 10, 11

23

24

*Uniloc USA, Inc. v. Apple, Inc.*,
    No. 18-358, 2020 WL 7122617 (N.D. Cal. Dec. 4, 2020) . . . . . . . . . . . . . . . . . . . . . . . . 12-14

25

26

*Univ. of Mass. v. L'Oreal S.A.*,
    36 F.4th 1374 (Fed. Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

27

28

1

## **TABLE OF AUTHORITIES**

*(continued)*

*Cases*                                                                   **Pages**

*Warth v. Seldin*,
    422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Watters v. Breja*,
    No. 23-3183, 2024 WL 201356 (N.D. Cal. Jan. 18, 2024) . . . . . . . . . . . . . . . . . . . . . . . .11

*Wells Fargo & Co. v. Wells Fargo Express Co.*,
    556 F.2d 406 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14, 15

*WiAV Sols. LLC, v. Motorola, Inc.*,
    631 F.3d 1257 (Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-13

*Wood v. City of San Diego*,
    678 F.3d 1075 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*WSOU Invs. LLC v. Juniper Networks Inc.*,
    No. 21-7557, 2022 WL 19709 (N.D. Cal. Jan. 3, 2022) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Statutes & Rules*

28 U.S.C. § 285 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Fed. R. Civ. P. 12(h)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Evid. 408(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

U.S. Const., Article I, Section 8, clause 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Secondary Sources*

Wright et al., 5B Fed. Prac. & Proc. Civ. § 1350 (4th ed.) . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Other Proceedings*

*Display Tech., LLC v. Aston Martin, LLC*,
    No. 20-258, Docket No. 24 (D. Del. Aug. 5, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Rothschild Pat. Imaging LLC v. GNOME Found.*,
    No. 19-5414, Docket No. 1 (N.D. Cal. Aug. 28, 2019) . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Rothschild Pat. Imaging LLC v. GNOME Found.*,
    No. 19-5414, Docket No. 52 (N.D. Cal. May 26, 2020) . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Valve Corp. v. Rothschild*
    No. 23-1016 (W.D. Wash.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*VoiceAge EVS LLC v. HMD Glob. Oy*,
    No. 19-1945, Docket No. 8 (D. Del. May 26, 2020) . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF STANDING

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### INTRODUCTION

3

The patent system exists "[t]o promote the Progress of Science and useful Arts, by securing for

4

limited Times to Authors and Inventors the exclusive Right to their respective Writings and

5

Discoveries." U.S. Const., Article I, Section 8, clause 8.  Because the patent right is the right to exclude,

6

a plaintiff may bring an infringement action only if it can exclude others from practicing an invention.

7

But if any other party besides the plaintiff can also license a patent, the plaintiff does not have "the

8

exclusive right" to that patent, cannot exclude anyone from practicing it, and thus cannot bring a lawsuit

9

alleging infringement.

10

That is why this action fails.  At least two entities besides plaintiff Display Technologies, LLC

11

have either offered to license or actually did license the patents-in-suit.  During negotiations preceding

12

this litigation, non-party Patent Asset Management, LLC offered Discord a license to a portfolio

13

including the patents-in-suit.  And in two separate, unrelated examples in which a confidential licensing

14

agreement became public, the newly public licensing agreements revealed that non-party Leigh M.

15

Rothschild had actually licensed portfolios including the patents-in-suit.  Because either or both Patent

16

Asset Management and Mr. Rothschild can license the asserted patents, plaintiff Display Technologies

17

LLC lacked constitutional standing to bring this suit when it filed its complaint.  For this failure, there is

18

no cure.  The Court must dismiss this action.

19

### BACKGROUND

20

**A.    The Rothschild Entities and Their Patent Litigation**

21

Plaintiff Display Technologies, LLC ("Display Technologies") forms a small part of a large web

22

of companies owned by prolific inventor and litigant Leigh M. Rothschild.  Although the structure of the

23

Rothschild entities has changed over time, as of now, Mr. Rothschild owns a Florida limited liability

24

company called Patent Asset Management, LLC (Ex. 1) and Patent Asset Management owns or manages

25

(or both) other companies within the Rothschild entities, including plaintiff Display Technologies, which

26

is registered as a Texas limited liability company.  *See* Exs. 2, 3.  The Rothschild entities are responsible

27

for a substantial fraction of U.S. patent litigation:  even looking only for complaints filed on or after

28

January 1, 2021, Discord found 335 cases filed by Rothschild entities.  Request for Judicial Notice

("RJN") ¶¶ 1-337.  The Rothschild entities file cases, but they do not litigate them; to the contrary, despite being prolific litigants, they work hard to avoid subjecting their patents to the scrutiny of the courts.  Of the 335 cases Discord found since January 1, 2021, only 117 lasted long enough for a Rule 12 response—just over one third—and only two cases reached a ruling on any substantive issue about an asserted patent, such as patentable subject matter, claim construction, infringement, or validity.  RJN ¶¶ 140, 259; *see id.* ¶¶ 1-337.  In both those cases, the Rothschild plaintiffs lost.

The Rothschild entities assert low-quality patents to achieve nuisance-level settlements.  This pattern is well known.  As then-District Judge Andrews noted in ruling on a Rothschild case:

> Pretty clearly, both from the course of proceedings I have seen in the cases filed by Plaintiff in this District and from the proceedings in this particular case, Plaintiff's business model does not involve actual litigation of cases, or the hiring of a damages expert.  The goal is simply a "nuisance-value" settlement.

*Display Tech., LLC v. Aston Martin, LLC*, No. 20-258, Docket No. 24 (D. Del. Aug. 5, 2021).  Similarly, the Federal Circuit found, in reversing the district court for abuse of discretion and ordering attorneys' fees under 28 U.S.C. § 285, that just one Rothschild entity had engaged in "[a] pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims," and that "the undisputed evidence regarding Rothschild's vexatious litigation warrants an affirmative exceptional case finding here." *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383, 1390 (Fed. Cir. 2017).  That "pattern of troubling litigation conduct" has continued across the Rothschild entities, which assert patents "numerous times against a broad swathe of defendants," but "[a]lmost all of those cases fail[] to advance beyond the pleadings." *Rothschild Digit. Confirmation, LLC v. CompanyCam, Inc.*, 494 F. Supp. 3d 263, 267-68 (D. Del. 2020); *see generally* RJN.  In various cases, the Rothschild entities have admitted that they are usually if not always willing to settle their claims for low five figures (*e.g.*, Exs. 4 ¶ 15; 5 ¶ 16; 6 ¶ 12), thus making "settlement offers that were 'less than ten percent of the cost that [a defendant] expended to defend suit'"—indeed, well below that threshold—and protecting their low-quality portfolio by "effectively ensur[ing] that [a plaintiff's] baseless infringement allegations remain unexposed." *Rothschild Digit. Confirmation,* 494 F. Supp. 3d at 267 (quoting *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011)).

Mr. Rothschild himself is central to every aspect of the Rothschild entities and their business. He serves or has served as an owner, executive, manager, or director of the Rothschild entities (*e.g.*, Exs. 1, 7-26), conducts settlement negotiations on their behalf (*e.g.*, Ex. 27), opines regarding claim construction of his patents (*e.g.*, Ex. 28), calculates damages claimed by the Rothschild entities (*e.g.*, Exs. 29-33), analyzes the asserted claims and claim constructions in their complaints before they file suit (*e.g.*, Ex. 34), avers to their good faith in filing cases (*e.g., id.*), provides declarations supporting their arguments regarding venue (*e.g.*, Exs. 35-39), and stays pending *inter partes* review (*e.g.*, Exs. 40-43), verifies their complaints (*e.g.*, Ex. 44 at 17), provides deposition testimony (*e.g.*, Exs. 45, 46), knows the location of their business records and maintains many if not all of them (*e.g.*, Ex. 47 ¶¶ 4-5, Ex. 48, ¶¶ 7-10), and even serves as their designated agent for service of process. *E.g.*, Exs. 1, 7-9. As Mr. Rothschild has repeatedly averred: "My patents are my single most important asset to all the businesses I own." *E.g.*, Ex. 41 ¶ 6; 42 ¶ 6. Looking from the outside at Mr. Rothschild and the Rothschild entities, it is difficult to say which is which.

**B.    Patent Asset Management's Licensing Discussions With Discord**

**1.    Rothschild's Initial Approach Through Symbology Innovations, LLC**

On February 15, 2023, Discord received a letter from Symbology Innovations, LLC, "in connection with its intellectual property portfolio." Ex. 49.[1]  The letter praised Mr. Rothschild for his "over a hundred and twenty-five patents on his inventions," described Symbology as a "holder of Mr. Rothschild's patents," and invited Discord to discuss "a non-litigious business solution mutually benefitting both parties" regarding four specific patents. *Id.*  Discord responded that the four patents were invalid and claimed unpatentable subject matter (Ex. 50), Symbology disagreed (Ex. 51), and Discord replied that Symbology had not responded "substantively to the invalidity or ineligibility

---

[1] Although the Rothschild entities sometimes attached an "FRE 408" label to various communications including this letter, their unilateral decision to do so cannot prevent this Court from considering this evidence, not only because most of these communications do not include an offer of compromise at all, but also because Discord is not trying to use any of these communications "to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408(a); *see also, e.g., Am. Gen. Life Ins. Co. v. James*, No. 14-4242, 2015 WL 730010, at *6 (N.D. Cal. Feb. 19, 2015) ("The court finds that the settlement communications contained within the challenged portions of the Counterclaim are not offered to prove the validity or amount of a disputed claim, but rather for another purpose, namely, as evidence of AGLIC's course of conduct.  Therefore, those communications do not fall within the ambit of Rule 408, and are not subject to a motion to strike.")

positions raised in our letter dated April 12, 2023," but that "[i]f you would like to provide a substantive response to our letter, or a concrete licensing proposal, we would be happy to consider it."  Ex. 52.

### 2. Rothschild Offers a Global Deal Covering All Rothschild Entities

In subsequent discussions with Discord, Rothschild offered two different potential licenses. First, a license covering only certain specified patents, initially associated only with Symbology but later adding another Rothschild entity called RFID Technology Innovations, LLC.  *See* Exs. 53, 54.  And second, he offered a "global license to the 100+ patent portfolio" held across the Rothschild entities, including "a license to the 100+ portfolio and future patents into perpetuity" and a covenant not to sue "Discord or its affiliates for 5 years on any patent held during that period," including later-acquired patents.  Ex. 54.  Rothschild did not specify the entity that would issue this license, but suggested proceeding after the parties executed a non-disclosure agreement:

> On the different issue of Leigh Rothschild controlled/owned entities and that universe of patented technologies, please confirm that Discord is definitely interested in a global structure whereby Discord takes a license to all of such patents (or perhaps a [sic] obtaining a CNS with respect to the same).  If such is of genuine interest, we suggest proceeding as follows: (1) entry into an NDA by appropriate parties (2) identification of patents constituting the current portfolio (3) providing written confirmation of Discord's defined interest(s) and (4) proceeding to negotiation.

Ex. 55.  Discord responded to confirm its "genuine interest" in broader discussions, noting that, "in any potential agreement between us," Discord "would like to pay a single amount certain in U.S. dollars," and "would like that payment to cover patent peace including all assets owned by Leigh Rothschild companies."  Ex. 56.  Discord invited "a path forward that will meet these objectives."  *Id.*

### 3. Patent Asset Management Reveals Itself as a Global Licensor of Rothschild Patents

On November 28, 2023, Patent Asset Management accepted Discord's invitation.  It transmitted a draft non-disclosure agreement between itself and Discord, for the purpose of "developing a business relationship in relation to its patent portfolio."  Ex. 57 at 5.  On December 15, 2023, Discord replied with a draft non-disclosure agreement, and suggested a call to discuss the proposals.  Ex. 58.  Following that call, on January 5, 2024, Patent Asset Management sent a revised draft non-disclosure agreement, and proposed that, "[b]y the earliest of three (3) business days following execution of the NDA, or January 17, 2024, PAM will disclose its listing of portfolio of assets and provide an initial lump sum one-time payment offer for licensing said assets."  Ex. 59.  Patent Asset Management also offered a

credit for the amount that Discord would pay Symbology if it executed the Symbology agreement.  *Id.*
Discord responded with additional proposals and requests regarding Patent Asset Management's draft.
Ex. 60.

### 4.    Patent Asset Management Alleges Infringement of the Patents-in-Suit

On January 24, 2024, Patent Asset Management sent Discord charts alleging infringement of
U.S. Patent Nos. 8,671,195 and 9,300,723, the patents-in-suit in this matter.  Exs. 61, 62.  The parties
spoke by telephone that day to discuss their potential NDA; during this call, Patent Asset Management
again offered Discord a global license to the Rothschild patents, across all Rothschild entities.  Exs. 63,
64.  The following day, Patent Asset Management asked Discord to "[p]lease send along the NDA and I
will work to get it signed on my end."  Ex. 63.  Discord did so (Ex. 65), Patent Asset Management
responded with revisions (Ex. 66), and on January 31, 2024, Discord replied with a further draft.  Ex. 67.
Patent Asset Management did not respond.

### 5.    Patent Asset Management Commences This Action, Repeats Global License Offer

Instead, on February 6, Patent Asset Management filed this action.  *See* Docket No. 1.  Although
the name on the complaint was "Display Technologies, LLC," two days after filing the complaint Patent
Asset Management confirmed its motivation for filing the case, forwarding an ECF notice with this text:

> Respectfully, upon review of your client's edits, Discord had no motivation to resolve its alleged
> patent infringement with Patent Asset Management, LLC even though we've sent your client
> charts for Symbology Innovations, LLC and Display Technologies, LLC.
>
> Now, the parties have motivation to resolve this dispute.  My client didn't appreciate a 90-day
> standdown named an NDA.

Ex. 68.  Setting aside statements of opinion, this email confirms two things.  First, it is on behalf of a
singular "client."  *Id.*  And, second, that "client" is "Patent Asset Management, LLC," with which
Discord must "resolve its alleged patent infringement," and not the other two companies, including the
nominal plaintiff here, for which Patent Asset Management has "sent your client charts."  *Id.*

After Discord appeared in this action, on March 12, 2024, Patent Asset Management again tried
to use the "motivation" of this action to its advantage, emailing Discord to renew its offer of a global
license to the Rothschild patents.  Ex. 64.  This time, Patent Asset Management included a list of patents
//

that would be covered by its offered global license, comprising 118 patents held by 41 entities, including nominal plaintiff Display Technologies and the two patents asserted in this action.  *Id.*

### 6.   Mr. Rothschild Describes His Singular "Company," Patent Asset Management

Patent Asset Management's global license offers to Discord are consistent with Mr. Rothschild's public statements about his enterprise.  Mr. Rothschild does not speak often about his patent licensing business, but when he does, he refers to himself as owning a single company, Patent Asset Management:

- "The business that I'm involved in now, **my company Patent Asset Management**, it shouldn't be and doesn't rely just on my inventions." The Patent Professor®, *Interview with Prolific Inventor - Leigh Rothschild – 877-728-7763 – The Patent Professor®*, YouTube (Dec. 28, 2021), https://youtu.be/uIxiYVZtukI at 24:29 (emphasis added).

- "**Patent Asset Management**, we're headquartered here in Fort Lauderdale, we also have an office in India and another one in London." *Id.* at 25:25 (emphasis added).

- "To the extent that we can help we're pleased to but I think it's going to take far more than me, and far more than **my company**." *Id.* at 30:51 (emphasis added).

- "And once you have a patent, don't let anyone trample on it.  Find an attorney, find a company like **our company Patent Asset Management**, which I'm chairman and CEO, to help defend your rights." Finding Genius Podcast, *The Entrepreneurial Mindset of Patent Accumulator Leigh Rothschild*, YouTube (Sep. 10, 2020), https://youtu.be/07PQ9-K8RTk at 12:21 (emphasis added).

- "I've also **set up a company now** to, you know, enforce the patents, license the patents. We have some excellent people that are working with me.  We have an affiliate office in London, another one in India.  Our main office is in Fort Lauderdale."  Seyfarth Shaw LLP, *Interview with NPE Leigh Rothschild*, YouTube (Sep. 8, 2023), https://youtu.be/ucfDCy26t8s at 2:48 (emphasis added).

Unsurprisingly, since he owns and manages Patent Asset Management, Mr. Rothschild's conception of the company matches its execution:  as an overall licensor of his portfolio.  Patent Asset Management is familiar with global licenses, as shown by its immediate willingness to discuss the concept and transmission of specific opening terms, and its repeated offers of global licenses including the patents-in-suit, before and after commencing this action.  *See supra* §§ B.3 to B.5.

## C.   Mr. Rothschild and His Companies Have Globally Licensed Their Patents Before

Patent Asset Management's global licensing practices tread familiar ground for Mr. Rothschild and his companies, which have globally licensed their patents before.  Although other such licenses likely lurk under the cover of confidentiality agreements, two examples have become public.

//

1

**1.      Mr. Rothschild's Global License to Valve**

2          On January 11, 2016, Mr. Rothschild executed a global license agreement with Valve

3    Corporation.  Ex. 69.  Mr. Rothschild's license to Valve defined Mr. Rothschild and Display

4    Technologies jointly as "Licensor," Valve as "Licensee," and stated that "Licensor hereby grants to

5    Licensee and Licensee's Affiliates a non-exclusive, non-transferable (except as provided for in Section

6    7.1), perpetual, irrevocable, royalty-free, fully paid-up, worldwide license, without the right to

7    sublicense, in and to" a list of twenty patents held by nine entities listed in Exhibit C to the license, plus

8    "all continuations, divisionals, continuations-in-part, extensions, reissues, reexaminations, and any other

9    patents or patent applications claiming priority to or through the patents" on the list.  *Id.* §§ 1.5, 3.1. Mr.

10   Rothschild's global license specifically noted that his holding companies allowed him to grant the

11   licenses in the agreement:

12          Licensor represents and warrants that as of the Effective Date (a) Licensor is the sole owner of
            the entire right, title and interest in and to the Licensed Patents, including all rights to enforce
13          and sue for past damages, as reflected by the "Assignee" entities listed in Exhibit C; and (b)
            Licensor has the right and authority to grant the rights, licenses and releases hereunder on behalf
14          of the entities listed in Exhibit C.

15   *Id.* § 9.2. Mr. Rothschild's global license also granted conditional licenses on behalf of other companies,

16   stating that "[i]n the event that Licensor gains control or ownership of any patent" on another list, the

17   license shall include the patents on that list "which Licensor gains ownership or control over."  *Id.* § 1.5.

18          Other provisions in Mr. Rothschild's global license emphasized his centrality to the transaction.

19   It stated that, under certain circumstances, Mr. Rothschild "will have the right to unilaterally terminate

20   this Agreement" (Ex. 69 § 9.3); its provisions governing warranty and limitations on damages protected

21   Mr. Rothschild personally but not the companies in Exhibit C (*id.* §§ 9.3, 9.4); its "Covenant Not to Sue

22   Licensor" protected Mr. Rothschild but not the companies in Exhibit C (*id.* § 3.3); and it allowed Mr.

23   Rothschild personally, but not the companies in Exhibit C, to "disclose the fact that a settlement and/or

24   license agreement has been reached with Licensee in connection with any other litigation or enforcement

25   efforts by Licensor with respect to the Licensed Patents."  *Id.* § 10.2, subsection 1.1.7.

26          Mr. Rothschild's global license to Valve included the patents-in-suit.  In this action, plaintiff

27   Display Technologies alleges infringement of two patents, U.S. Patent Nos. 8,671,195, and 9,300,723.

28   *See generally* Compl.; *see also* Compl. Exs. 1 & 3.  The '195 patent issued before execution of the Valve

license and appeared in Exhibit C; the '723 patent issued after execution of the license and thus could not appear in Exhibit C, but is a continuation-in-part of the application leading to the '195 patent, *see* Compl. Ex. 1 at 1, and thus is a "Licensed Patent" under the license.  Ex. 69 § 1.5.

The global license to Valve also contained a detailed confidentiality clause, Ex. 69 § 10; it became public only because of later litigation.  *See generally Valve Corp. v. Rothschild*, No. 23-1016 (W.D. Wash.).  In that litigation, which remains ongoing, Valve alleges that Mr. Rothschild breached his global license because Rothschild entities asserted infringement of patents covered by the license, including U.S. Patent No. 8,856,221, nominally owned by a company called Rothschild Broadcast Distribution Systems, LLC, or "RBDS."  Ex. 70 ¶¶ 65-77.  The '221 patent appeared on Exhibit C to Mr. Rothschild's global license, but RBDS did not.  Ex. 69 at 19-20.

In response, Mr. Rothschild and other Rothschild defendants moved to dismiss the action—not because they rejected the validity of Mr. Rothschild's global license, but because they *confirmed* that Mr. Rothschild's global license *governed the Rothschild entities*, and thus no case or controversy remained. As they described it, "Mr. Rothschild and DT [Display Technologies] entered into a Global Settlement and License Agreement covering a number of patents owned by DT and/or other entities controlled by Mr. Rothschild."  Ex. 71 at 6.  Thus, "there is no justiciable case or controversy between the parties because Plaintiff has a fully paid-up, irrevocable license and a covenant not to sue from the Rothschild Defendants."  *Id.* at 5.  Indeed, the Rothschild defendants specifically argued that because Mr. Rothschild's global license remains in effect, "[t]he covenant not to sue therefore also remains in effect" and "also binds RBDS," even though RBDS appears nowhere in Mr. Rothschild's global license to Valve.  *Id.* at 11 (citing Ex. 69 § 3.2).  The Rothschild defendants thus specifically admitted and argued that Mr. Rothschild not only can license patents held by Rothschild entities not named in a license, but also can bind those entities, without their signatures, in a covenant not to sue.  *See id.*

### 2.    Mr. Rothschild's Global License Covering Open Source Software

Although Mr. Rothschild's global license to Valve is broad, his global license covering open-source software is even broader.  As usual with the Rothschild entities, the license arose from litigation.  In 2019, Rothschild Patent Imaging LLC sued the GNOME Foundation, a California non-profit. *See Rothschild Pat. Imaging LLC v. GNOME Found.*, No. 19-5414, Docket No. 1 (N.D. Cal.

Aug. 28, 2019). The case settled when Mr. Rothschild granted a broad license to all of his patents, past and future, covering *all* open-source software distributed under common software licenses. *Id*., No. 19-5414, Docket No. 52 (N.D. Cal. May 26, 2020); Ex. 72.

Mr. Rothschild's global license covering open-source software defined the "Rothschild Entities" to include "Rothschild together with every entity that he directly or indirectly Controls and/or that owns a Rothschild Patent in whole or in part" (Ex. 72 at 2), and further defined the "Rothschild Patents" to include "any and all Patents that name Leigh Rothschild as an inventor, whether or not currently in existence," as well as all related patents "owned on the execution date of this Agreement by Leigh Rothschild or a Rothschild Entity." *Id.* It then used these terms to grant a broad license, first to the GNOME foundation and its past and future affiliates, and then to all open-source software:

> Rothschild, on behalf of himself and the Rothschild Entities, grants a nonexclusive, fully paid-up, irrevocable covenant not to sue (i) Grantee and its Affiliate(s) for any Claim of patent infringement including without limitation with respect to the Rothschild Patent(s), provided that Grantee and its Affiliates, as the case may be, are and remain non-profit organizations; and (ii) any individual or entity anywhere in the world for infringement of the Rothschild Patents solely with respect to Open Source Initiative Approved Software where the Open Source Initiative Approved Software is the material basis for a claim of infringement of the Rothschild Patent(s).

Ex. 72 at 4.[2] The first license to "Grantee and its Affiliate(s)" prevents any claim of patent infringement, of any patent, brought by any company, past, present or future, controlled by Mr. Rothschild. *Id.* It covers both the GNOME Foundation and its "Affiliate(s)," defined as "any and all Entities, past, present, or future, that are or were Controlled" by the GNOME Foundation. *Id.* at 1. The second license bars Mr. Rothschild and the Rothschild Entities from asserting any claim of "infringement of the Rothschild Patents" against "any individual or entity anywhere in the world" concerning any functionality within "Open Source Initiative Approved Software," which includes all software released under a long list of

---

[2] In these paragraphs, Mr. Rothschild's license uses the words "covenant not to sue" rather than "license." But "a non-exclusive patent license is equivalent to a covenant not to sue." *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275 (2009) (citing *De Forest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236, 242 (1927) and collecting cases). Recognizing this equivalence, in other paragraphs the same agreement uses the term "license." *E.g.*, Ex. 72 ¶ 4 (stating that "any assignment of the rights under this Agreement in connection with a merger or sale of substantially all assets of Grantee shall only extend to the licensed activities and products of Grantee and/or Grantee's Affiliates that are the subject to this Agreement as of the date of the sale, transfer or spin-off"; ¶ 8(a) ("Grantee did not provide any goods or services in exchange for the contribution of this license"); ¶ 8(b) (to facilitate Mr. Rothschild's tax deduction, he will "substantiate the contribution by engaging an independent qualified appraiser to perform a qualified appraisal of the license").

licenses set forth in Schedule 2.  *Id.* at 1, 4, 13-15.  Unlike his global license to Valve, Mr. Rothschild's global license covering open-source software did not include an exhibit listing the patents or entities it included, and did not need to do so, because it included all the "Rothschild Patents" and "Rothschild Entities" as broadly defined in the agreement.  *See id.* at 2, 4.  In exchange for this license, Mr. Rothschild received an unspecified tax deduction.  *Id.* at 7.

Mr. Rothschild's global license covering open-source software included the patents-in-suit, which are "Rothschild Patents" because Mr. Rothschild is their sole named inventor (Ex. 72 at 2; Compl., Exs. 1, 3), and thus fall under Mr. Rothschild's license "with respect to the Rothschild Patent(s)."  Ex. 72 ¶ 2(a) at 4.

Just like Mr. Rothschild's global license to Valve, his open-source global license contained a detailed confidentiality clause.  Ex. 72 ¶ 10 at 8.  It is now public only because software engineer and open-source activist James Bottomley obtained a copy and posted it on the Internet.  Ex. 73; https://blog.hansenpartnership.com/lessons-from-the-gnome-patent-troll-incident/ (archived at https://archive.is/L0pEq).

## **ARGUMENT**

### I.    **Display Technologies Lacks Standing to Bring This Action**

#### A.    **Standing to Bring Infringement Claims Requires the Ability to Exclude**

"A federal court must have subject matter jurisdiction to hear any case."  *Bernahl v. Eversheds Sutherland Ltd.*, No. 23-411, — F. Supp. 3d. —, —, 2023 WL 6796022, at *2 (N.D. Cal. Oct. 13, 2023). A "'lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).'"  *Urban v. Tesla, Inc.*, No. 22-7703, — F. Supp. 3d. —, —, 2023 WL 6796021, at *2 (N.D. Cal. Oct. 13, 2023) (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011)).  Thus, standing is a "threshold question in every federal case, determining the power of the court to entertain the suit."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  "The party bringing the action bears the burden of establishing that it has standing."  *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005) (citing *Pfizer, Inc. v. Elan Pharm. Rsch. Corp.*, 812 F. Supp. 1352, 1356 (D. Del. 1993)).  "If a court determines that it lacks subject matter jurisdiction at any time, it must sua sponte

//

1   dismiss the case." *Watters v. Breja*, No. 23-3183, 2024 WL 201356, at *3 (N.D. Cal. Jan. 18, 2024)

2   (citing Fed. R. Civ. P. 12(h)(3)).

3   "A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction . . . may be made at

4   any time." *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 319 (9th Cir. 2017), *aff'd sub nom. Apple*

5   *Inc. v. Pepper*, 139 S. Ct. 1514 (2019). "Indeed, '[t]he objection that a federal court lacks subject-matter

6   jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation,

7   even after trial and the entry of judgment." *Wood v. City of San Diego*, 678 F.3d 1075, 1082 (9th Cir.

8   2012) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006) (alteration in original)). "Under Rule

9   12(b)(1), an attack on jurisdiction 'can either be facial, confining the inquiry to allegations in the

10  complaint, or factual, permitting the court to look beyond the complaint.'" *Urban v. Tesla, Inc.*, No.

11  22-7703, — F. Supp. 3d. —, —, 2023 WL 6796021, at *1 (N.D. Cal. Oct. 13, 2023) (quoting *Savage v.*

12  *Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)). A "factual Rule 12(b)(1) motion,"

13  such as this one, "can attack 'the substance of a complaint's jurisdictional allegations despite their

14  formal sufficiency, and in doing so rely on affidavits or any other evidence properly before the court.'"

15  *Bernahl v. Eversheds Sutherland Ltd.*, No. 23-411, — F. Supp. 3d. —, —, 2023 WL 6796022, at *1

16  (N.D. Cal. Oct. 13, 2023) (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)); *see*

17  Wright et al., 5B Fed. Prac. & Proc. Civ. § 1350 (4th ed.) ("District courts have broad discretion to

18  consider relevant and competent evidence on a motion to dismiss for lack of subject matter jurisdiction

19  that raises factual issues.").[3]

20  "Because the legally protected interests in a patent are the exclusionary rights created by the

21  Patent Act," to show standing to bring an infringement action such as this one, plaintiff must "establish

22  that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the

23  exclusionary right to suffer legal injury." *WiAV Sols. LLC, v. Motorola, Inc.*, 631 F.3d 1257, 1264-65

24  (Fed. Cir. 2010); *see also, e.g., Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1292 (Fed. Cir. 2016)

25  ("To establish standing under Article III, a plaintiff must demonstrate, *inter alia*, that it has suffered an

26  'injury in fact.' 'Constitutional injury in fact' occurs when a party infringes a patent in violation of a

27  _____

28  [3] The quotation of *St. Clair* in *Bernahl* contains a slight typographical error, adding the word
   "brought" after "properly." Although this word would not change the meaning of the quotation, it does
   not appear in *St. Clair*. *Compare* 880 F.2d at 201 *with* — F. Supp. 3d. —, —, 2023 WL 6796022, at *1.

party's exclusionary rights.") (citation omitted).  As a result, a plaintiff "lacks standing to sue a party who has the ability to obtain such a license from another party with the right to grant it."  *WiAV Sols. LLC*, 631 F.3d at 1266; *see also*, *e.g.*, *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1348 (Fed. Cir. 2016) ("If Disney Enterprises could indeed license any entity to manufacture and sell candles having Artificial Flame Technology, Candella would not have had exclusionary rights to the asserted patents."); *Acceleration Bay LLC v. Activision Blizzard, Inc.*, No. 16-453, 2017 WL 3668597, at *3 (D. Del. Aug. 24, 2017) ("Defendants had the ability to obtain a license from Sony at all relevant times because Sony could have granted Defendants licenses as of late 2006.  Because of this, Plaintiff has not shown that it had the right under the patents to exclude the Defendants from engaging in the alleged infringing activity.  It therefore could not have been injured as a result.  Plaintiff lacks standing to sue Defendants with respect to games covered by the Sony license.") (citation omitted).  Another party's "right to grant an unencumbered sublicense renders even the *patent owner's* right to exclude (and, thus, to sue) illusory."  *Uniloc USA, Inc. v. Apple, Inc.*, No. 18-358, 2020 WL 7122617, at *7 (N.D. Cal. Dec. 4, 2020) (emphasis in original) (citing *Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354, 1362 (Fed. Cir. 2010)).

**B.**     **Because Both Patent Asset Management and Mr. Rothschild Can License The Patents-in-Suit, Plaintiff Display Technologies Cannot Exclude Discord From Practicing the Patents, and Thus Cannot Bring This Case**

Both Patent Asset Management and Mr. Rothschild can license Discord the patents-in-suit. Patent Asset Management tried to do so both before and after commencing this action.  *See supra* §§ B.3 to B.5.  Mr. Rothschild actually did license the patents-in-suit and other patents, both to Valve (*see supra* § C.1) and to the GNOME Foundation (*see supra* § C.2).  It does not matter if the plaintiff owns the patents; another party's right to license "renders even the *patent owner's* right to exclude (and, thus, to sue) illusory."  *Uniloc*, 2020 WL 7122617, at *7 (emphasis in original).  It does not matter how Patent Asset Management and Mr. Rothschild obtained these rights, for example, whether the Rothschild entities have explicitly given Mr. Rothschild licensing rights, or if he simply treats the interconnected web of Rothschild entities as his alter egos or alter egos of Patent Asset Management, or both, granting licenses to their patents willy-nilly.  And it does not matter how often Patent Asset Management and Mr. Rothschild exercise these rights, although Discord believes discovery would reveal that they have done

so fairly often; it matters only that they have them. *Uniloc USA, Inc. v. Apple, Inc.*, a recent case in this District, explained the applicable doctrine and applied it to require dismissal where another party merely *could* have licensed the patent-in-suit in that case. No. 18-358, 2020 WL 7122617 (N.D. Cal. Dec. 4, 2020). In *Uniloc*, plaintiffs granted their funder, Fortress Credit Co. LLC, "'a non-exclusive, royalty free, license (including the right to grant sublicenses) with respect to the Patents' but on the condition that Fortress 'shall only use such license following an Event of Default.'" *Id.* at *1 (quoting the agreement). The Unilocs missed their financial targets under the agreement, which "triggered an Event of Default," thus giving Fortress the license. *Id.* at *4. Although Fortress did not actually grant a license to anyone, the Court found that its ability to do so was sufficient to prevent the plaintiffs from having standing to sue:

> Here then, though Uniloc Luxembourg held title to the '203 patent, it had granted *both* Uniloc USA and Fortress licenses which permitted each to sublicense the patent. Aside from agreeing to seek the Unilocs' consent before granting sublicenses that would impose financial burdens on them, Fortress held an unfettered right in its "sole and absolute discretion" to license the '203 patent to the world. Neither Uniloc Luxembourg nor Uniloc USA could have had an expectation that others would not practice the '203 patent and would not have been injured if and when others did so.

2020 WL 7122617, at *7 (citation omitted). The same is true here—except that, unlike in *Uniloc* where no one tried to license anything, Patent Asset Management *actually tried* to license Discord, and Mr. Rothschild *actually did* license Valve, the GNOME Foundation, and an unspecified but large number of open-source developers. Just as in *Uniloc*, their ability to license the patents-in-suit destroys standing here. 2020 WL 7122617, at *7; *see, e.g.*, *Luminara*, 814 F.3d at 1348; *WiAV Sols.*, 631 F.3d at 1264-65. Without the ability to exclude Discord from practicing the patents-in-suit, plaintiff Display Technologies had no right to bring this action for infringement.

## II.   The Court Should Dismiss This Action for Lack of Standing

For this failure, there is no cure. Courts follow "the longstanding principle that 'the jurisdiction of the Court depends upon the state of things at the time of the action brought.'" *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) (quoting *Mollan v. Torrance*, 22 U.S. 537, 539 (1824)). Under this rule, "in a patent infringement action, 'the plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit' to assert standing." *Abraxis Bioscience, Inc. v. Navinta LLC*, 625

F.3d 1359, 1364 (Fed. Cir. 2010) (quoting *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309-10 (Fed. Cir. 2003)).  But "'if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured' after the inception of the lawsuit." *Abraxis*, 625 F.3d at 1364 (quoting *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005)); *see, e.g.*, *Uniloc*, 2020 WL 7122617, at *8 ("Uniloc Luxembourg and Uniloc USA's licensing scheme deprived them of exclusionary rights in the '203 patent.  This, in turn, deprived them of Article III standing.  Such a defect cannot be cured, even via joinder.").  Following this rule, the Court should dismiss this action.

**III.    If the Court Does Not Dismiss the Action, It Should Grant Jurisdictional Discovery**

   If the Court does not dismiss this action outright, it should defer resolution of this issue and order jurisdictional discovery to determine whether the plaintiff has standing to bring its complaint.  Although "the question of whether to allow discovery is generally within the discretion of the trial judge," when "pertinent facts bearing on the question of jurisdiction are in dispute, discovery should be allowed." *Am. West Airlines, Inc. v. GPA Grp.*, 877 F.2d 793, 801 (9th Cir. 1989) (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430-31 n.24 (9th Cir. 1977)); *see, e.g.*, *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1235 (Fed. Cir. 2010) (citing *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003)).  When "evidence raises the *possibility* that discovery might" resolve a jurisdictional question, parties are "entitled to jurisdictional discovery before any jurisdictional determination, if one remains necessary, is made." *Univ. of Mass. v. L'Oreal S.A.*, 36 F.4th 1374, 1385 (Fed. Cir. 2022) (emphasis in original) (citing *Nuance*, 626 F.3d at 1233-34).

   Here, at minimum, the "evidence raises the *possibility* that discovery might" resolve the jurisdictional question before this Court.  The evidence so far available to Discord—its own negotiations with Patent Asset Management, and two global licenses that became public—show that Mr. Rothschild and his companies not only negotiate global licensing agreements, but also ensure that those agreements include confidentiality provisions, thus preventing them from becoming public. *See supra* §§ B, C.  It would be an awfully big coincidence if the two Rothschild agreements that became public in very different ways—one through later litigation, and the other through an open-source activist—just happened to be the only two Rothschild agreements that included global licenses; it is much more likely

that discovery will uncover many more. Discord's evidence so far does not merely "raise[] the *possibility* that discovery might" resolve a jurisdictional issue, but a strong probability.

Furthermore, because jurisdiction is a threshold issue that will prevent the case from proceeding, the Court should otherwise stay the case pending resolution of the jurisdictional issue. Where, as here, "a threshold subject matter jurisdictional question is raised by a motion to dismiss, a district court should use its discretion to defer discovery of issues unrelated to jurisdiction until it resolves the pending jurisdictional issue first." *Comm. for Immigr. Rts. of Sonoma Cnty. v. Cnty. of Sonoma*, No. 08-4220, 2009 WL 10692620, at *2 (N.D. Cal. Apr. 20, 2009) (citing *Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*, 5 F.3d 378, 383 (9th Cir. 1993)); *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977). In a patent case such as this one, much of the "discovery of issues unrelated to jurisdiction" happens through the exchanges mandated by the Patent Local Rules; the Court should therefore confirm that its stay covers those exchanges as well as other non-jurisdictional discovery.[4]

Exactly that occurred in *VoiceAge EVS LLC v. HMD Global Oy*, where defendant HMD Global moved to dismiss for lack of standing because "multiple third-parties appear to have retained the right to license or otherwise 'forgive' HMD's allegedly infringing activities." *VoiceAge EVS LLC v. HMD Glob. Oy*, No. 19-1945, Docket No. 8 at 10 (D. Del. May 26, 2020). Although the Court did not immediately grant the motion, it ordered jurisdictional discovery and stayed the case "pending completion of jurisdictional discovery and a final determination by the Court about whether Plaintiff has standing and

---

[4] *Comm. for Immigr. Rts. of Sonoma Cnty.*, 2009 WL 10692620 at *3. Although not strictly applicable as Discord does not seek a stay pending *inter partes* review, this District's analysis of such stay requests is also helpful here. "The three factors a court considers in deciding whether to stay a case in light of pending patent proceedings are: (1) the stage of the present litigation and whether discovery is complete; (2) whether a stay will simplify the issues in question; and (3) whether a stay would unduly prejudice the nonmoving party." *Columbia Ins. Co. v. Simpson Strong-Tie Co. Inc.*, — F.3d. —, —, No. 23-2432, 2023 WL 8101932, at *3 (N.D. Cal. Nov. 21, 2023). All three factors support a stay here. This case is at the earliest of stages and discovery has not yet begun; a stay will simplify the issues by determining whether the case may proceed at all; and plaintiff, an admitted non-practicing entity, will suffer no prejudice not fully compensable by "money damages adequate to remedy that harm should [it] ultimately succeed in this litigation." *Columbia*, — F.3d. at —, 2023 WL 8101932, at *5; *see, e.g.*, *WSOU Invs. LLC v. Juniper Networks Inc.*, No. 21-7557, 2022 WL 19709, at *6 (N.D. Cal. Jan. 3, 2022) ("a non-practicing entity seeking monetary damages" has not "demonstrated any prejudice here other than a delay in asserting its rights"); *PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1029 (N.D. Cal. 2014) ("[C]ourts have consistently found that a patent licensor cannot be prejudiced by a stay because monetary damages provide adequate redress for infringement.").

NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF STANDING

the Court has subject matter jurisdiction." *Id.*, Order, No. 19-1945, (D. Del. Jan. 22, 2021).  This Court should do the same here.  Discord's arguments against standing are stronger than those in *VoiceAge*.  There, the defendant's motion to dismiss claimed only that others "appear to have" the ability to license; here, Discord has shown Patent Asset Management actually offering to license Discord, and two examples of Mr. Rothschild actually issuing global licenses.  If the Court does not dismiss the complaint, it should allow discovery into jurisdiction, but otherwise stay proceedings in this case.

## **CONCLUSION**

    For the reasons stated above, the Court should dismiss this action for lack of standing or, in the alternative, order jurisdictional discovery but otherwise stay the case.

Date:  March 29, 2024                            Respectfully submitted,

                                                 _____
                                                 Matthew S. Warren (State Bar No. 230565)
                                                 Erika H. Warren (State Bar No. 295570)
                                                 Francesca M. S. Germinario (State Bar No. 326208)
                                                 WARREN KASH WARREN LLP
                                                 2261 Market Street, No. 606
                                                 San Francisco, California, 94114
                                                 +1 (415) 895-2940
                                                 +1 (415) 895-2964 facsimile
                                                 24-703@cases.warrenlex.com

                                                 *Attorneys for Defendant Discord Inc.*