# EXHIBIT 50

# Hawkinson Yang

1801 Century Park East, Ste. 2400
Los Angeles, California 90067
(213) 634-0370 main
(213) 260-9305 fax

Matthew J. Hawkinson
mhawkinson@hycounsel.com
(213) 634-0369 direct

April 12, 2023

*Via email*

Renita S. Rathinam
rathinam@miplaw.com
McNeely, Hare & War, LLP
5335 Wisconsin Ave, N.W. Suite 440
Washington, DC 20015

Re:     ***Symbology Patent Assertion and Licensing Offer Letter***

Dear Ms. Rathinam:

We write in response to your letter dated February 15, 2023 regarding Symbology Innovations, LLC's ("Symbology") allegations as to Discord, Inc.'s ("Discord") alleged use of certain intellectual property assets purportedly owned by Symbology: specifically, U.S. Patent Nos. 7,992,773, 8,424,752, 8,651,369, and 8,936,190 (the "Asserted Patents").

We conducted an initial investigation into the allegations in your letter, the enclosed claim chart, and the Asserted Patents. For the reasons set forth in detail below, any allegations of infringement are meritless because the Asserted Patents are invalid under one or more of 35 U.S.C. §§ 101, 102, and/or 103.

As an initial matter, while your letter alleges potential infringement of all four Asserted Patents, the claim chart enclosed with your letter only includes analysis related to one claim from one patent: Claim 1 of U.S. Patent No. 8,424,752 ("the '752 Patent"). Based on your statement that the enclosed claim chart exemplifies infringement of all four Asserted Patents, we assume, for purposes of this letter and without any admission that Symbology is correct, that Claim 1 of the '752 Patent is representative of the other claims in the '752 Patent, as well as the claims of the other three Asserted Patents.

Furthermore, the respective cover pages of the Asserted Patents purport to claim priority to Application No. 12/882,616 filed on September 15, 2010. However, we take no position on the accuracy of that date, and we expressly reserve the right to dispute the September 15, 2010 priority date. Nonetheless, we have used this date for purposes of the analysis in this letter.

Renita S. Rathinam
April 12, 2023
Page 2

**I.       The Asserted Patents Are Invalid Under 35 U.S.C. § 102 and/or 35 U.S.C. § 103**

Our initial investigation into representative Claim 1 of the '752 Patent shows that it is plainly invalid under 35 U.S.C. § 102 and/or § 103. Your infringement allegations are based on Discord's purported use of QR codes. QR Codes are almost 30 years old: "A QR code (an initialism for quick response code) is a type of matrix barcode (or two-dimensional barcode) invented in 1994 by Japanese company Denso Wave."[1] Furthermore, the use of a portable electronic device equipped with a digital camera used to capture QR codes and decode a link to a website was known years before the earliest priority date shown on the faces of the Asserted Patents. One example is U.S. Published Patent Application 2007/0181691 ("the Chang reference"), filed on February 9, 2006 and titled System And Method For Information Retrieval With Barcode Using Digital Image Capture Devices. Fig. 2 from the Chang reference is copied below, showing use of a mobile phone to capture and decode a QR code:



Attached as Exhibit A is a claim chart demonstrating how the Chang reference anticipates and/or renders obvious Claim 1 of the '752 Patent.

---

[1] *See, e.g.,* https://en.wikipedia.org/wiki/QR_code

Renita S. Rathinam
April 12, 2023
Page 3

Another example is U.S. Patent No. 7,988,037 ("Yach") filed November 2, 2009 and titled Device And Method For Contact Information Exchange. We include Fig. 9 from Yach below, showing the process by which a mobile phone equipped with a digital camera can scan a barcode (like a QR code), decode a URL, and then obtain remote data (like a website) from that URL.



**FIG. 9**

Attached as Exhibit B is a claim chart demonstrating how the Yach reference anticipates and/or renders obvious Claim 1 of the '752 Patent.

The Chang and Yach references are merely exemplary, and found based on our brief initial investigation. Given the age of the technology in question (QR codes used in connection with mobile phones), there are certainly numerous additional prior art references that invalidate the Asserted Patents. It is not plausible that Symbology was not previously aware of these or similar prior art references, but in any event Symbology is now aware of these references at least by virtue of this letter.

Renita S. Rathinam
April 12, 2023
Page 4

## II.     The Asserted Patents Are Invalid Under 35 U.S.C. § 101

Based on our initial analysis, the Asserted Patents are also invalid under 35 U.S.C. § 101. As you are surely aware, abstract ideas are ineligible for patentability under 35 U.S.C. § 101. *See, e.g., Bilski v. Kappos*, 561 U.S. 593, 611-612 (2010)("Abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work."). In *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) the Supreme Court set forth a two-part test for determining whether a patent claim is directed to an abstract idea and therefore unpatentable. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Id.* at 2355. Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted). The claims of the Asserted Patents here are invalid under 35 U.S.C. § 101 because they fail both steps of the *Alice* test.

### A.     *Alice* Step 1: The claims of the Asserted Patents are directed to an abstract idea

Representative Claim 1 of the '752 Patent is directed to using a camera-equipped mobile phone to scan barcode to obtain information in order to access a webpage, i.e., the abstract ideas of capturing images, detecting barcodes, decoding barcodes, and sending, receiving, and displaying data. Courts have found similar patent claims to be ineligible. In *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1345 (Fed. Cir. 2014), the Federal Circuit found unpatentable similar claims directed to "a method of 1) extracting data from hard copy documents using an automated digitizing unit such as a scanner, 2) recognizing specific information from the extracted data, and 3) storing that information in a memory." *Content Extraction*, 776 F.3d at 1345. Similarly, in *Recognicorp, LLC v. Nintendo Co., Ltd.,* 855 F.3d 1322 (Fed. Cir. 2017), the Federal Circuit held claims requiring "encoding and decoding image data" were directed to an unpatentable abstract idea. *Recognicorp*, 855 F.3d at 1324. And as yet another example, in *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017), the Federal Circuit found claims directed to encoding and decoding a QR code invalid under both *Alice* steps. *Secured Mail*, 873 F.3d at 907.

### B.     *Alice* Step 2: The claims of the Asserted Patents contain no inventive concept sufficient to transform the abstract idea into patent-eligible matter

Representative Claim 1 of the '752 Patent merely describes the known process of decoding a barcode to access a website. There can be no transformative inventive concept where a claim simply uses a known process. *See Secured Mail*, 873 F.3d at 912. Neither Claim 1 nor the specification of the '752 Patent provide any technical explanation as to how to implement the purported invention in an inventive way. *See In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 615 (Fed. Cir. 2016) (claims directed to an "image analysis unit for determining quality of the digital images" found to fail *Alice* step 2 where "the specification limits its discussion of these components to abstract functional descriptions devoid of technical explanation as to how to implement the invention."). Similar to the invalidated claim in *Recognicorp*, nothing in Claim 1 of the '752 Patent "'transforms' the abstract idea of . . . decoding," *i.e.*, recognizing information, "into patent-eligible subject matter." *Recognicorp*, 855 F.3d at 1328 (citing *Alice*, 134 S. Ct. at 2357). Courts have repeatedly held that the presence of generic hardware and software like the kind recited in Claim 1 of the '752 Patent does not make an otherwise abstract idea patent-eligible. *See, e.g., buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014).

Renita S. Rathinam
April 12, 2023
Page 5

     Accordingly, because the claims of the Asserted Patents fail both steps of the *Alice* test, they are patent-ineligible under § 101.

     We trust that this letter resolves the matter.

Yours truly,

Matthew Hawkinson
Partner
Hawkinson Yang LLP

# Exhibit A

**Exhibit A: U.S. Published Patent Application 2007/0181691 ("Chang")**

Claim 1 ("Asserted Claim") of U.S. Patent No. 8,424,752 ("Asserted Patent") is anticipated and/or rendered obvious by U.S. Published Patent Application 2007/0181691 ("Chang"). Chang is prior art under at least 35 U.S.C. § 102(b) and 35 U.S.C. § 103 because it was published more than one year prior to the September 15, 2010 date of prior application listed on the face of the Asserted Patent.

These contentions are based on Symbology's apparent interpretation of the Asserted Claim, e.g., as set forth in the claim chart attached to its February 15, 2023 letter. Nothing stated herein shall be treated as an admission or suggestion that Discord agrees with Symbology's positions regarding the scope of the Asserted Claim or any claim construction advanced by Symbology, or that any of Discord's accused products and/or services meets any limitation of the Asserted Claim. Nothing stated herein shall be construed as an admission or a waiver of any particular construction of any claim term. Discord also reserves all rights to challenge any of the claim terms herein under 35 U.S.C. § 112, including by arguing that they are indefinite, not supported by the written description, and/or not enabled. Accordingly, nothing stated herein shall be construed as a waiver of any argument available under 35 U.S.C. § 112.

The cited portions of the prior art references are merely illustrative, and Discord reserves the right to rely on alternative or additional evidence, including uncited portions of the prior art references. Where the chart below states that the reference "discloses" or "describes" or "teaches" a limitation, such disclosure may be express, inherent, or implicit.

| | Claim 1 | Exemplary Disclosures |
|---|---|---|
| a | A method comprising: capturing a digital image using a digital image capturing device that is part of a portable electronic device; | Chang at [0006]: The present invention provides a system and method designed to quickly decode barcodes obtained via digital camera and processing according to decoded information. The invention empowers a user to use a cell phone or PDA equipped with a digital camera to scan barcodes (one dimensional and two dimensional) or any other supported codes. The image obtained with the digital camera of the mobile device/computer is decoded using the decoder residing on the mobile device/computer.<br><br>Chang at [0019]: Mobile devices and computers with digital camera built in or attached to are commonly available today, like camera phone, PDA with digital camera, smart phone with digital camera, notebook computers with attached digital camera, even digital cameras with internet accessibility. The initiated decoder opens an imaging screen for the user to scan the barcode. No capturing action required from the digital camera for decoding purpose, the user only needs to move the mobile device so the barcode image would fill the center half of the screen, without |

**Exhibit A: U.S. Published Patent Application 2007/0181691 ("Chang")**

|   | Claim 1 | Exemplary Disclosures |
|---|---------|------------------------|
|   |         | specific requirement on handling techniques or particular angling, nor is particular direction of the barcode needed for procedure 202.<br><br>Chang [0021]: The detailed process the decoder goes through to complete the task of decoding is shown as FIG. 4. The decoder can reside in mobile devices or computers with digital cameras built in or attached to (used in 201, FIG. 2), or the decoder can be placed in any server to provide the service of upload decoding. The same process is undertaken regardless of where the decoder is performing its task. |
| b | detecting symbology associated with an object within the digital image using a portable electronic device; | Chang [0018]: With reference to FIG. 1, showing several different one dimensional and two dimensional barcode formats. The decoder can be customized to be able to decode any of the standardized barcodes or any proprietary barcodes as long as the owner of rights to the proprietary barcodes grants legal use. Examples of Standardized and proprietary barcode formats include, but not limited to, UPC, ISBN, EAN, Code 39, PDF 417, QR Code, Data Matrix, QuickMark. The decoder can further be customized as to be able to decode any particular barcode format only or be able to decode several different formats automatically.<br><br>Chang [0019]: To learn what information is contained in the barcode seen by a user, FIG. 2 shows the procedures the decoder utilizes to extract information from the barcode seen. The user can initiate decoder on the mobile device he/she carries or the computer available, as in procedure 201. |

**Exhibit A: U.S. Published Patent Application 2007/0181691 ("Chang")**

| | Claim 1 | Exemplary Disclosures |
|---|---|---|
| | |  |
| c | decoding the symbology to obtain a decode string using one or more visual detection applications residing on the portable electronic device; | Chang at [0006]: The present invention provides a system and method designed to quickly decode barcodes obtained via digital camera and processing according to decoded information. The invention empowers a user to use a cell phone or PDA equipped with a digital camera to scan barcodes (one dimensional and two dimensional) or any other supported codes. The image obtained with the digital camera of the mobile device/computer is decoded using the decoder residing on the mobile device/computer.<br><br>Chang [0019]: The initiated decoder opens an imaging screen for the user to scan the barcode. No capturing action required from the digital camera for decoding purpose, the user only needs to move the mobile device so the barcode image would fill the center half of the screen, without specific requirement on handling techniques or particular angling, nor is particular direction of the barcode needed for procedure 202. Once the decoder obtains a decodable image, processing calculation automatically kicks in to extract the information contained in the barcode, as in 203, |

3

**Exhibit A: U.S. Published Patent Application 2007/0181691 ("Chang")**

| | Claim 1 | Exemplary Disclosures |
|---|---|---|
| | | no action needed from the user to push any button or any other move yet at this step still. Extracted information is displayed on screen of the device/computer used for 204. Extracted information can be product information, address, direction, answers in response to questions raised, web page, inventory data, initiation of purchasing process, monetary payment process, or information with instruction for further actions requesting user consent, etc. The decoder extracts information locally without requiring additional resource. Some information extracted can contain instructions for further actions to take which would require user confirmation, as in 205. Without user consent, the flow ends. When user chooses to carry out the action, some may require internet connection to retrieve additional information or request authorization, like in payment process. The format for requesting and receiving is standard HTTP protocol. Other actions may simply require user's consent to save the information or carry out local function, like dialing a certain phone number. The flow is completed when all actions are executed according to user's consent. The internet connection can be achieved through PAC, GSM, 3G PHS, WAP, EDGE, GPRS, Wireless LAN, WiMAX, and any internet connection channel accessible using above mentioned mobile device or computer. <br><br> Chang [0021]: The detailed process the decoder goes through to complete the task of decoding is shown as FIG. 4. The decoder can reside in mobile devices or computers with digital cameras built in or attached to (used in 201, FIG. 2), or the decoder can be placed in any server to provide the service of upload decoding. The same process is undertaken regardless of where the decoder is performing its task. |
| d | sending the decode string to a remote server for processing; | Chang [0019]: The initiated decoder opens an imaging screen for the user to scan the barcode. No capturing action required from the digital camera for decoding purpose, the user only needs to move the mobile device so the barcode image would fill the center half of the screen, without specific requirement on handling techniques or particular angling, nor is particular direction of the barcode needed for procedure 202. Once the decoder obtains a decodable image, processing calculation automatically kicks in to extract the information contained in the barcode, as in 203, no action needed from the user to push any button or any other move yet at this step still. Extracted information is displayed on screen of the device/computer used for 204. Extracted information can be product information, address, direction, answers in response to questions raised, web page, inventory data, initiation of purchasing process, monetary payment process, or |

**Exhibit A: U.S. Published Patent Application 2007/0181691 ("Chang")**

|   | Claim 1 | Exemplary Disclosures |
|---|---------|----------------------|
|   |         | information with instruction for further actions requesting user consent, etc. The decoder extracts information locally without requiring additional resource. Some information extracted can contain instructions for further actions to take which would require user confirmation, as in 205. Without user consent, the flow ends. When user chooses to carry out the action, some may require internet connection to retrieve additional information or request authorization, like in payment process. The format for requesting and receiving is standard HTTP protocol. Other actions may simply require user's consent to save the information or carry out local function, like dialing a certain phone number. The flow is completed when all actions are executed according to user's consent. The internet connection can be achieved through PAC, GSM, 3G PHS, WAP, EDGE, GPRS, Wireless LAN, WiMAX, and any internet connection channel accessible using above mentioned mobile device or computer. |
| e | receiving information about the object from the remote server wherein the information is based on the decode string of the object; | Chang [0019]: The decoder extracts information locally without requiring additional resource. Some information extracted can contain instructions for further actions to take which would require user confirmation, as in 205. Without user consent, the flow ends. When user chooses to carry out the action, some may require internet connection to retrieve additional information or request authorization, like in payment process. The format for requesting and receiving is standard HTTP protocol. Other actions may simply require user's consent to save the information or carry out local function, like dialing a certain phone number. The flow is completed when all actions are executed according to user's consent. The internet connection can be achieved through PAC, GSM, 3G PHS, WAP, EDGE, GPRS, Wireless LAN, WiMAX, and any internet connection channel accessible using above mentioned mobile device or computer.<br><br>Chang [0028]: Decoded information is displayed on the screen of user's mobile device/computer for user to view, and user can proceed to execute instructions contained in the information if user chooses to. |
| f | displaying the information on a display device associated with the portable electronic device. | Chang [0019]: The decoder extracts information locally without requiring additional resource. Some information extracted can contain instructions for further actions to take which would require user confirmation, as in 205. Without user consent, the flow ends. When user chooses to carry out the action, some may require internet connection to retrieve additional information or request authorization, like in payment process. The format for requesting and receiving is standard |

**Exhibit A: U.S. Published Patent Application 2007/0181691 ("Chang")**

|  | Claim 1 | Exemplary Disclosures |
|---|---|---|
|  |  | HTTP protocol. Other actions may simply require user's consent to save the information or carry out local function, like dialing a certain phone number. The flow is completed when all actions are executed according to user's consent. The internet connection can be achieved through PAC, GSM, 3G PHS, WAP, EDGE, GPRS, Wireless LAN, WiMAX, and any internet connection channel accessible using above mentioned mobile device or computer.<br><br>Chang [0028]: Decoded information is displayed on the screen of user's mobile device/computer for user to view, and user can proceed to execute instructions contained in the information if user chooses to. |

# Exhibit B

**Exhibit B: U.S. Patent Number 7,988,037 ("Yach")**

Claim 1 ("Asserted Claim") of U.S. Patent No. 8,424,752 ("Asserted Patent") is anticipated and/or rendered obvious by U.S. Patent Number 7,988,037 ("Yach"). Yach is prior art under at least 35 U.S.C. § 102(e) and 35 U.S.C. § 103 because it claims priority to an application filed more than one year prior to the September 15, 2010 date of prior application listed on the face of the Asserted Patent.

These contentions are based on Symbology's apparent interpretation of the Asserted Claim, e.g., as set forth in the claim chart attached to its February 15, 2023 letter. Nothing stated herein shall be treated as an admission or suggestion that Discord agrees with Symbology's positions regarding the scope of the Asserted Claim or any claim construction advanced by Symbology, or that any of Discord's accused products and/or services meets any limitation of the Asserted Claim. Nothing stated herein shall be construed as an admission or a waiver of any particular construction of any claim term. Discord also reserves all rights to challenge any of the claim terms herein under 35 U.S.C. § 112, including by arguing that they are indefinite, not supported by the written description, and/or not enabled. Accordingly, nothing stated herein shall be construed as a waiver of any argument available under 35 U.S.C. § 112.

The cited portions of the prior art references are merely illustrative, and Discord reserves the right to rely on alternative or additional evidence, including uncited portions of the prior art references. Where the chart below states that the reference "discloses" or "describes" or "teaches" a limitation, such disclosure may be express, inherent, or implicit.

|   | Claim 1 | Exemplary Disclosures |
|---|---------|----------------------|
| a | A method comprising: capturing a digital image using a digital image capturing device that is part of a portable electronic device; | Col. 2:20-23: In another aspect, the present application provides an electronic device. The electronic device comprises a display; a camera; memory storing user contact data; a processor, and a code reader application executable by the processor.<br><br>Col. 16:15-20: Reference will now be made to FIG. 9 which illustrates a process 900 for obtaining and transmitting contact information in accordance with one embodiment of the present application. The process may be performed by a mobile device 201, and more specifically, by the controller 240 and/or code reader application 228 associated with the mobile device 201. |

**Exhibit B: U.S. Patent Number 7,988,037 ("Yach")**



**FIG. 9**

2

| | Claim 1 | Exemplary Disclosures |
|---|---|---|
| b | detecting symbology associated with an object within the digital image using a portable electronic device; | Col. 8:24-36: As will be described in greater detail below, the code reader 262 and code reader application 228 are configured to obtain an image in which data is encoded and to decode the image to obtain the data. More specifically, in the present example embodiments the image contains a barcode in which the data is encoded. In some example embodiments, the barcode may be a Universal Product Code (UPC) such as a UPC-A or UPC-E code, a European Article Number code such as EAN-8 or EAN-13, a Code 39 code, a Code 128 code, a Quick Response (QR) Code, a Data Matrix, or an Interleaved 2-of-5 (ITF) code. Those ordinarily skilled in the art will appreciate the range of barcodes and barcode-like images for encoding data that may be used in the context of the present application.<br><br>Col. 8:6-16: In the present embodiment, the code reader 262 is a digital camera which takes video or still photographs or both by recording images using an electronic image sensor. The electronic image sensor may be a charge-coupled device (CCD) or complementary metal oxide semiconductor (CMOS) active pixel sensor. In embodiments in which the code reader 262 is a digital camera, the code reader application 228 may be a module in a camera application which is configured to obtain (or capture) digital images using the electronic image sensor. Light incident on the electronic image sensor is converted to image data by the code reader 262.<br><br>Col. 8:44-51: The code reader 262, under control of the code reader application 228, obtains the image containing the encoded information. In one embodiment, the code reader 262 captures the image and stores it in memory, for example, as a JPEG image, or in another format. The code reader application 228 is configured to analyze the stored image to detect a barcode within the image (if any), and decode the detected barcode.<br><br>Col. 8:52-64: In another embodiment, the code reader 262 does not capture an image and later analyze the image, but rather it operates in a "viewfinder mode" in which the incident light received by the CCD is converted to image data and displayed on the display in near-real-time, and the code reader application 228 analyzes the image data as the user manipulates the device 201 to bring the barcode within the field of view of the code reader 262. Once the code reader application 228 detects, i.e. recognizes, that a barcode is present in the field of view, then it causes the code reader 262 to obtain the image and the code reader application 228 decodes the barcode |

**Exhibit B: U.S. Patent Number 7,988,037 ("Yach")**

|   | Claim 1 | Exemplary Disclosures |
|---|---------|----------------------|
|   |         | within the image. This may be referred to as a barcode scanning mode of operation for the code reader 262. |
| c | decoding the symbology to obtain a decode string using one or more visual detection applications residing on the portable electronic device; | Col. 8:24-36: As will be described in greater detail below, the code reader 262 and code reader application 228 are configured to obtain an image in which data is encoded and to decode the image to obtain the data. More specifically, in the present example embodiments the image contains a barcode in which the data is encoded. In some example embodiments, the barcode may be a Universal Product Code (UPC) such as a UPC-A or UPC-E code, a European Article Number code such as EAN-8 or EAN-13, a Code 39 code, a Code 128 code, a Quick Response (QR) Code, a Data Matrix, or an Interleaved 2-of-5 (ITF) code. Those ordinarily skilled in the art will appreciate the range of barcodes and barcode-like images for encoding data that may be used in the context of the present application.<br><br>Col. 8:44-51: The code reader 262, under control of the code reader application 228, obtains the image containing the encoded information. In one embodiment, the code reader 262 captures the image and stores it in memory, for example, as a JPEG image, or in another format. The code reader application 228 is configured to analyze the stored image to detect a barcode within the image (if any), and decode the detected barcode.<br><br>Col. 8:52-64: In another embodiment, the code reader 262 does not capture an image and later analyze the image, but rather it operates in a "viewfinder mode" in which the incident light received by the CCD is converted to image data and displayed on the display in near-real-time, and the code reader application 228 analyzes the image data as the user manipulates the device 201 to bring the barcode within the field of view of the code reader 262. Once the code reader application 228 detects, i.e. recognizes, that a barcode is present in the field of view, then it causes the code reader 262 to obtain the image and the code reader application 228 decodes the barcode within the image. This may be referred to as a barcode scanning mode of operation for the code reader 262.<br><br>Col. 17:3-8: At step 908, the mobile device 201 determines whether the decoded information includes contact information. In some cases, the device 201 may be used to scan barcodes for |

4

**Exhibit B: U.S. Patent Number 7,988,037 ("Yach")**

|   | Claim 1 | Exemplary Disclosures |
|---|---------|----------------------|
|   |         | other purposes. For example, barcodes printed in an advertisement or newspaper may be used to link to a website or other remote location. Many other uses are possible. |
| d | sending the decode string to a remote server for processing; | Col. 9:31-39: In some example embodiments, the contact information encoded within the barcode may include a URL or other remote address. The URL or other address may be in addition to, or as an alternative to, business contact details. The code reader application 228 is configured to download additional information from a remote server accessed via the URL or other remote address. The additional information may include additional contact details or data, Such as a photograph or layout/stylesheet data.<br><br>Col. 7:38-44: The mobile communication device 201 may communicate with any one of a plurality of fixed transceiver base stations 108 (FIG. 1) of the wireless network 101 within its geographic coverage area. The mobile communication device 201 may send and receive communication signals over the wireless network 101 after a network registration or activation procedures have been completed.<br><br>Col. 17:3-8: At step 908, the mobile device 201 determines whether the decoded information includes contact information. In some cases, the device 201 may be used to scan barcodes for other purposes. For example, barcodes printed in an advertisement or newspaper may be used to link to a website or other remote location. Many other uses are possible. |
| e | receiving information about the object from the remote server wherein the information is based on the decode string of the object; | Col. 9:31-39: In some example embodiments, the contact information encoded within the barcode may include a URL or other remote address. The URL or other address may be in addition to, or as an alternative to, business contact details. The code reader application 228 is configured to download additional information from a remote server accessed via the URL or other remote address. The additional information may include additional contact details or data, Such as a photograph or layout/stylesheet data.<br><br>Col. 17:3-8: At step 908, the mobile device 201 determines whether the decoded information includes contact information. In some cases, the device 201 may be used to scan barcodes for other purposes. For example, barcodes printed in an advertisement or newspaper may be used to link to a website or other remote location. Many other uses are possible. |

**Exhibit B: U.S. Patent Number 7,988,037 ("Yach")**

|   | Claim 1 | Exemplary Disclosures |
|---|---------|-----------------------|
|   |         |                       |
| f | displaying the information on a display device associated with the portable electronic device. | Col. 17:39-50: In some embodiments, the device 201 may then perform step 914, wherein the contact information obtained from the barcode, or the URL/remote address, or both, are displayed on the screen of the device 201. Step 914 may include formatting the contact information in accordance with a predefined contact information layout scheme. In some cases, a stylesheet or other layout information may be encoded in the barcode or obtained from the URL/remote address.<br><br>Col. 9:58-Col. 10:2: In some embodiments, the code reader application 228 may be configured to display the contact information on the display 210 of the device 201. In some cases, the code reader application 228 may be configured to display the contact information in a predetermined format; for example in a format that appears similar to a business card layout. In yet other cases, the information encoded within the barcode may include format or layout data that specifies the manner in which the contact information is to be displayed. In yet further cases, the layout data may be obtained from a URL or remote address specified in the contact information; for example, in the form of a stylesheet. |