# EXHIBIT 53



Renita S. Rathinam
Rathinam@miplaw.com
Direct Dial: 1.202.253.4903

July 7, 2023

**VIA EMAIL**
Matthew J. Hawkinson
mhawkinson@hycounsel.com
Hawkinson Yang
1801 Century Park East, Ste. 2400
Los Angeles, CA 90067

<u>RE: Invitation for Discussion of Mutually Beneficial Business Solution (FRE 408)</u>

Dear Mr. Hawkinson:

We write in reply to your correspondence of June 20, 2023. As an initial matter, we do not intend to litigate issues by letter or in any setting outside the confines of an adjudicative proceeding. Accordingly, while we do not expect vigorous advocacy at this pre-litigation stage, we note that the burden of invalidating Symbology's patents does/will rest with Discord. As we believe was reasonably explained in our May 30th letter, Discord's present views lack merit. Nonetheless, in hopes of moving resolution discussions forward, comments further addressing your April 12th positions follow below.

Respectfully, Discord has not properly addressed the substance of Symbology's claims. In particular, Discord's reliance on Denso Wave, Chang, and Yach for its 102/103 positioning reflects what appears to be an oversimplified read of exemplary Claim 1 of the '752 patent. Symbology's patent claims and its infringement concerns do not go generally to QR codes and/or relatively early uses thereof — of the sort described in Yach and Chang. The Denso Wave, Chang and Yach references, taken alone or in combination, either merely reflect the existence of QR code technology and at best go to limited uses of barcode technologies. A categorical lumping of Symbology's innovations with matter subject of these disclosures is misplaced. That barcode technology may have a history, as discussed in your letter (pp. 2-3), does not automatically render Symbology's innovative contributions anticipated, obvious or unpatentable.

None of the rationale set forth based on Denso Wave, Chang or Yach references in any way warrants a concession that the specific Symbology inventions in question were suggested, let alone known, at the relevant time of filing. Symbology's patents do not go to the use of well-known components for generic functions of data recognition and retrieval. Such a proposition wholly overlooks the novelty and non-obviousness of the inventions as described and claimed in these patents, as recognized by the Patent Office. Symbology's patents encompass inventive concepts and involve

M. Hawkinson
July 7, 2023
Page 2 of 2

functional combinations, configurations, and techniques that provide significant advancements in the field of data recognition and retrieval.

      As to Discord's patent ineligibility assertions, the analysis and case law discussion set forth in your letter likewise appears to be grounded in an oversimplified read of exemplary Claim 1 of the '752 patent, as discussed above. The Symbology patents do not present a *Bilski* scenario —wherein subject matter claimed was directed to abstract ideas amounting to basic tools of scientific or technological work. *See Bilski v. Kappos*, 561 U.S. 593, 611-612 (2010). The cases you reference in connection with your analysis under *Alice Corp. Pty. Ltd. v. CLS Bank Int'l,* 134 S. Ct. 2347 (2014) involve subject matter found to be directed to concepts and components that were determined to be well-understood, conventional and in routine use as of the time of filling of the applications at issue. *See Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014); *RecogniCorp LLC v. Nintendo Co.*, 855 F.3d 1322, 1326-28 (Fed. Cir. 2017); *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 909-912 (Fed. Cir. 2017). Such is not the case here. Again, the Symbology inventions at hand do not go to abstract ideas or seek to preempt concepts that were in routine use or well-known at the relevant time period. Rather, they specifically define novel and non-obvious methods, systems, and apparatuses that constitute marked improvements upon existing technologies in a manner that is both concrete and tangible.

      In any case, given the complexity, costs and potential risks involved in litigation, we appreciate your willingness to consider a licensing proposal and believe this route to be in our respective clients' best interests. Please see the attached. We believe this proposal reflects a mutually beneficial resolution and look forward to your response regarding the same.

      Sincerely,

      Renita S. Rathinam

Enclosures: as stated

FRE 408 Communication

## [Proposed] Settlement and License Agreement

This **Settlement and License Agreement** (this "Agreement") dated as of the date of signature of the last signatory below (the "Effective Date"), is entered into by and between, on one hand, Symbology Innovations, LLC, a Texas limited liability company, with a place of business at 1 East Broward Boulevard, Suite 700, Fort Lauderdale, Florida 33301 ("Symbology"; the "Licensor"), and on the other hand, Discord Inc., ("Discord"; the "Licensee"), a Delaware corporation, with a place of business at 444 De Haro Street #200, San Francisco, CA 94107. Each of the Licensor and Licensee shall be referred to as a "Party" to this Agreement, and are collectively referred to herein as the "Parties."

WHEREAS, Licensor owns certain patent assets, namely the Symbology Patents, as defined herein and listed in **Exhibit B**;

WHEREAS, Licensor has notified Licensee of Licensee's potential infringement of one or more of the patents in the Symbology Patents, as defined herein and listed in **Exhibit B**;

WHEREAS, neither of the Parties admits any liability, or makes any admission about the infringement, validity, enforceability, and/or value of any other Party's intellectual property or claims, defenses, and/or counterclaims solely with respect to any potential infringement disputes relating to the Symbology Patents, as defined herein and listed in **Exhibit B**, nor does this Agreement reflect any assessment, determination, and/or admission regarding any of the foregoing;

WHEREAS, this Agreement does not reflect an assessment of any damages based on the economic contribution attributable to Licensee's potential infringement of the Symbology Patents, as defined herein and listed in **Exhibit B**, to which Licensor would potentially be entitled if the Symbology Patents, as defined herein and listed in **Exhibit B**, were adjudicated by a Court and/or jury of any competent jurisdiction to be valid, enforceable, and infringed with respect to any such potential infringement, including any assessment of a reasonable royalty under *Georgia-Pacific Corp. v. United States Plywood Corp.,* 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) and/or, if applicable, any lost profits, and reflects only a value of settlement based solely on the uncertainty and disputed, unadjudicated nature of each Party's respective positions as of the Effective Date, including any actual or potential claims, defenses, and/or counterclaims with respect to any such potential infringement disputes;

WHEREAS, Licensor is willing to provide a license to Licensee for the Symbology Patents, as defined herein and listed in **Exhibit B**, and a mutual release and covenant not to sue to and between Licensee; and

WHEREAS, the Parties seek to minimize the potential expenses and costs of resolving any such potential infringement disputes, including, but not limited to, costs and expenses of litigation, alternative dispute resolution, and/or otherwise, by resolving any such disputes through the mutual terms, conditions, covenants, grants, and/or releases set forth herein.

NOW, THEREFORE, in consideration of the mutual terms, conditions, covenants, grants, and/or releases set forth herein, and for other good and valuable consideration, of which the receipt and sufficiency are hereby acknowledged by both Parties, and intending to be legally bound, the Parties hereby agree as follow:

FRE 408 COMMUNICATION

## 1    DEFINITIONS

Solely for purposes of this Agreement, the following terms, when capitalized, shall have the following meanings:

"**Affiliate**" means any Person of which, as of the Effective Date, a Party, directly or indirectly, (i) has voting shares or other voting securities entitled to vote for the election managing authority of such entity (*e.g.*, officers, directors, managers, and/or similar managing authority); (ii) has ownership and/or control of more than fifty percent (50%) of the outstanding shares or securities entitled to vote for the election managing authority of such entity (*e.g.*, officers, directors, managers, and/or similar managing authority); or (iii) has no such outstanding shares or securities as in (i) or (ii), but has more than fifty percent (50%) of the ownership interest representing the right to manage such entity. An entity shall be deemed to be an Affiliate under this Agreement, and, thus, covered thereunder, only so long as all the requirements of being an Affiliate in (i), (ii), or (iii) above are met and only as identified in **Exhibit C**, regardless of whether such entity is otherwise considered either a Parent Entity and/or Subsidiary Entity as defined herein.

"**Agreement**" has the meaning set forth in the preamble.

"**Covered Products**" means all machines, manufactures, compositions of matter, methods, processes, apparatuses, devices, hardware, software, firmware, applications, data, web sites, advertisements, images, documents, products, systems, and/or other products and/or services, which, on or before the Effective Date, are, and/or may be, practicing a method, used, provided, made, operated, distributed, sold, offered for sale, leased, offered for lease, licensed, offered for license, imported, exported, developed, and/or otherwise disposed of, transferred, and/or exploited by, and/or on behalf of, Licensee and/or any Affiliate of Licensee, which, in the absence of this Agreement, would, whether directly, via the doctrine of equivalents, and/or indirectly, including via induced infringement and/or contributory infringement, actually infringe, potentially infringe, and/or otherwise be reasonably subject to any disputes between the Parties regarding actual and/or potential infringement of at least one claim of any Symbology Patent. This shall not include the machines, manufactures, compositions of matter, methods, processes, apparatuses, devices, hardware, software, firmware, applications, data, web sites, advertisements, images, documents, products, systems, and/or other products and/or services of any Third Party (any of the foregoing being a "Third Party Product"), except to the limited extent any such Third Party Product is solely practicing a method, used, provided, made, operated, distributed, sold, offered for sale, leased, offered for lease, licensed, offered for license, imported, exported, developed, and/or otherwise disposed of, transferred, and/or exploited on behalf of, and for the sole benefit of, Licensee and/or any Affiliate of Licensee.

"**Disputed Activities**" means any and all past, present, and/or future claims and/or liabilities, and/or any such claims for damages directly resulting therefrom, of any kind and/or nature, whether at law, in equity, or otherwise, whether known or unknown, suspected or unsuspected, disclosed or undisclosed, against any Person for any actual, alleged, and/or potential patent infringement of any claim of any Symbology Patent, whether such claims, liabilities, and/or damages accrued and/or existed, and/or were, or reasonably could have been, raised, on or before the Effective Date, as related to, arising out of, and/or involving the acts of any Person.

"**Document Request**" means, with respect to any confidential and/or other protected materials or a Party, any subpoena, order, and/or discovery request made to a Party by, and/or under the authority of, any Government Authority.

"**Effective Date**" has the meaning set forth in the preamble.

FRE 408 COMMUNICATION

"**Government Authority**" means any federal, state, national, supranational, and/or other government, whether domestic or foreign, including any subdivision, department, agency, instrumentality, authority (including any tax and/or regulatory authority), commission, board, and/or bureau thereof, and/or any court, tribunal, and/or arbitrator.

"**Parent Entity**" means a legal entity which has and/or owns a controlling interest in a second entity (*e.g.*, a Subsidiary Entity).

"**Person**" means any individual, corporation, partnership, joint venture, limited liability company, Government Authority, unincorporated organization, trust, association, or other entity.

"**Representative**" means the agents, attorneys, accountants, financial advisors, and tax professionals of a Party.

"**Subsidiary Entity**" means a legal entity in which a second entity (*e.g.*, a Parent Entity) has and/or owns a controlling interest.

"**Symbology Patents**" means (a) those patent assets listed in **Exhibit B**, namely (1) U.S. Patent No. 7,992,773, entitled "System and Method for Presenting Information about an Object on a Portable Electronic Device"; (2) U.S. Patent No. 8,424,752, entitled "System and Method for Presenting Information about an Object on a Portable Electronic Device"; (3) U.S. Patent No. 8,651,369, entitled "System and Method for Presenting Information about an Object on a Portable Device"; and (4) U.S. Patent No. 8,936,190, entitled "System and Method for Presenting Information about an Object on a Portable Electronic Device"; (b) any patent applications, including any provisional and/or non-provisional patent applications, from which the patent assets listed in **Exhibit B** were granted; (c) any continuations, divisionals, continuations-in-part, extensions, reissues, and/or reexaminations of the foregoing, as well as any patents issued and/or granted therefrom; and/or (d) any patents and/or patent applications, including any provisional and/or non-provisional patent applications, claiming priority to any of the foregoing.

"**Third Party**" means any Person other than the Parties and/or any Affiliate of a Party.

## 2     COVENANTS; GRANTS; AND RELEASES

    **2.1**   **Covenant Not to Sue Licensee**. Subject to the terms and conditions of this Agreement, including the payment provided under Paragraph 4.1, Licensor hereby covenants not to bring suit against Licensee and/or any of Licensee's Affiliates, based upon, and/or involving, assertion of any claim and/or liability for, and/or damages directly resulting from, any Disputed Activities of Licensee and/or any of Licensee's Affiliates in connection with: (i) any such previously alleged claims for patent infringement by, or specifically involving, any of the Covered Products; and/or (ii) any claim of any Symbology Patent, as specifically related to the Covered Products.

    **2.2**   **Covenant Not to Sue Third Party Licensees**. Subject to the terms and conditions of this Agreement, including the payment provided under Paragraph 4.1, Licensor hereby covenants not to bring suit against any and all vendors, suppliers, manufacturers, distributors, direct customers of Licensee, and/or direct end-users of any Covered Product (a "Third Party Licensee"), based upon, and/or involving, assertion of any claim and/or liability for, and/or damages directly resulting from, any Disputed Activities of any Third Party Licensee in connection with: (i) any such previously alleged claims for patent infringement by, or specifically involving, any of the Covered Products; and/or (ii) any claim of any Symbology Patent, as specifically related to the Covered Products.

FRE 408 COMMUNICATION

2.3 **Covenant Not to Sue Licensor**. Subject to compliance, by Licensor, with the terms and conditions of this Agreement, Licensee hereby covenants that, at no time, will Licensee directly and/or indirectly initiate and/or assist in or with any proceeding (including any reexamination, *inter partes* review, and/or other post-grant proceeding) and/or lawsuit (including any trial and/or appellate proceeding), in any forum, at any time, in which Licensee alleges, claims, argues, brings, and/or supports and/or encourages another Person, in alleging, claiming, arguing, and/or bringing, any claims and/or defenses with respect to any Symbology Patent, including, without limitation, any claim and/or defense that any claim in any Symbology Patent is, and/or should be held or found, invalid, unenforceable, and/or non-patentable, unless and until Licensor, in breach of this Agreement, alleges, claims, argues, and/or brings claims and/or allegations, in any lawsuit, that Licensee and/or any Licensee Affiliate, and/or any Third Party Licensee which has been disclosed by Licensee to Licensor, including pursuant to Paragraph 3.1, has engaged in, and/or committed, any Disputed Activity in connection with any claim of any Symbology Patent, as specifically related to the Covered Products.

2.4 **Release by Licensor of Licensee**. Subject to the terms and conditions of this Agreement, including the payment provided under Paragraph 4.1, Licensor hereby irrevocably releases, acquits, and forever discharges Licensee, Licensee's Affiliates, and Licensee's respective officers, directors, managers, and attorneys from any Disputed Activities of Licensee and/or any of Licensee's Affiliates in connection with: (i) any such previously alleged claims for patent infringement by, or specifically involving, any of the Covered Products; (ii) any claim of any Symbology Patent, as specifically related to the Covered Products; and/or (iii) the conduct of settlement negotiations occurring before the Effective Date (except for representations and/or obligations expressly included in this Agreement), as specifically related to the Covered Products.

2.5 **Release by Licensor of Third Party Licensees**. Subject to the terms and conditions of this Agreement, including the payment provided under Paragraph 4.1, Licensor hereby irrevocably releases, acquits, and forever discharges any and all Third Party Licensees from any Disputed Activities of any Third Party Licensee, solely to the limited extent any such activity of any Third Party Licensee concerns the Covered Products of, or for, Licensee, in connection with the Symbology Patents, and solely with respect to any of the Covered Products.

2.6 **Release by Licensee of Licensor**. Subject to compliance, by Licensor, with the terms and conditions of this Agreement, Licensee hereby irrevocably releases, acquits and forever discharges Licensor and Licensor's respective officers, directors, shareholders, managers, employees, agents, consultants, experts, representatives, and attorneys from any and all past, present, and/or future claims and/or liabilities, and/or any such claims for damages directly and/or indirectly resulting therefrom, of any kind and/or nature, whether at law, in equity, or otherwise, whether known or unknown, suspected or unsuspected, disclosed or undisclosed, against Licensor for any acts of Licensor, whether such claims, liabilities, and/or damages accrued and/or existed**,** and/or were, or reasonably could have been, raised, on or before the Effective Date, as related to, arising out of, and/or involving the acts of Licensor in connection with any previously alleged claims for patent infringement by, or specifically involving, any of the Covered Products; (ii) any claim of any Symbology Patent; and/or (iii) the conduct of settlement negotiations occurring before the Effective Date (except for representations and/or obligations expressly included in this Agreement).

2.7 **License by Licensor to Licensee of Symbology Patents**. Subject to the terms and

conditions of this Agreement, including the payment provided under Paragraph 4.1, Licensor hereby grants (i) to Licensee and Licensee's Affiliates a non-exclusive, perpetual, irrevocable, royalty-free, fully paid-up, worldwide, non-transferable (except as provided for in Paragraph 11.12) license, *without the right to sublicense*, in and to the Symbology Patents; (ii) to Third Party Licensees a non-exclusive, perpetual, irrevocable, royalty-free, fully paid-up, worldwide, non-transferable (except as provided for in Paragraph 11.12) license, *without the right to sublicense*, in and to the Symbology Patents, solely to practice a method, use, provide, make, have made, operate, have operated, distribute, sell, offer for sale, lease, offer for lease, import, export, develop, and/or otherwise dispose of, transfer, and/or exploit any Covered Product.

## 3    CLOSING FOR LICENSE

3.1   **Dismissal of Third Party Licensee**. To the extent Licensor has any pending lawsuits and/or similar proceedings against any Third Party Licensee related to, and/or involving, any Disputed Activities of any Third Party Licensee specifically related to any Covered Product and any claim of any Symbology Patent, Licensor shall undertake to dismiss with prejudice any and all claims specifically related to any such Disputed Activities against any such Third Party Licensee within five (5) days of Licensor's receipt of payment of the Consideration (as hereinafter defined), provided Licensee provides reasonably prompt written notice to Licensor of any such pending lawsuits and/or similar proceedings involving the foregoing.

## 4    CONSIDERATION

4.1   **Payment**. In consideration of the covenants, releases, and licenses granted by Licensor, and the dismissal by Licensor of any claims, liabilities, and/or damages for any Disputed Activity of Licensee, Licensee's Affiliates, and/or Third Party Licensee, as specifically set forth herein, Licensee hereby agrees to pay to Licensor a total payment of thirty thousand dollars ($30,000.00) (the "Consideration"), to be fully paid within Five (5) calendar days of the Effective Date. In the event that the Consideration is not paid within the specified time period, Licensor shall have the right to immediately terminate this Agreement and such Consideration shall bear interest in the amount of zero point two percent (0.2%) per week that the Consideration is late (or the maximum amount allowed under law, if less than the foregoing amount). Such payment shall be by electronic or wire transfer to an account specified by Licensor as set forth in attached **Exhibit A** to this Agreement. No other payments are required by this Agreement, nor are any royalties and/or additional payments of any kind required in order to maintain this Agreement in force. Notwithstanding anything contained herein to the contrary, this Agreement shall not be effective unless and until the Consideration has been received by Licensor. The Parties hereby agree that the foregoing Consideration solely reflects a settlement of Licensor's disputed claims, including Licensee's potential exposure, the extent of the alleged and/or potential infringement, and the avoidance of the costs, expenses, and time associated with the infringement assertions, as of the Effective Date, and no representation is made by the Parties that the foregoing Consideration represents the economic contribution of the Symbology Patents to Licensee's Covered Products or that the foregoing Consideration is an indication and/or representation of the value of the Symbology Patents, whether viewed individually or collectively, to either Party or any third party. The Consideration paid to Licensor under this Agreement shall be nonrefundable, including in the event of any later and/or contemporaneous finding of invalidity, unenforceability, and/or non-patentability of the claims in any patents of the Symbology Patents. For internal purposes the payment shall be considered to be a royalty payment.

**4.2** **Taxes**. Licensor shall bear all U.S. taxes imposed with respect to payments made to it hereunder. For clarity, this does not include any other taxes, charges, and/or fees, for example, non-U.S. taxes or non-U.S. tax withholdings.

**4.3** **No Withholding**. Licensee's payment of the Consideration hereunder shall be made free and clear of, without any deduction or withholding for, any taxes, withholding taxes, assets, duties, permits, tariffs, fees, and/or other charges, offsets, or setoffs of any kind.

## 5   TERM AND TERMINATION

**5.1** **Term**. The term of this Agreement shall be for the duration of, including through the end of, the expiration of the life of the latest-expiring patent of the Symbology Patents, including any additional life granted thereto, including pursuant to 35 U.S.C. § 156, MPEP Ch. 2700, and/or any similar foreign law and/or regulation, unless earlier terminated as allowed by this Agreement, provided that the covenants, releases, and licenses granted by Licensor herein shall survive in perpetuity.

## 6   BREACH AND OPPORTUNITY TO CURE

**6.1** **Opportunity to Cure Alleged Breach**. If either Party breaches this Agreement, the non-breaching Party must: (i) provide written notice of the breach within sixty (60) days of the alleged breach; and (ii) provide the breaching Party thirty (30) Business Days from such written notice to cure any such alleged breach. If any such alleged breach is cured within this period, then no breach shall be deemed to have occurred under this Agreement.

**6.2** **No Waiver of Obligations; Agreement Obligations Not Released**. Failure by either Party to enforce any term of this Agreement shall not be deemed a waiver of future enforcement of that, or any other, term in this Agreement or any other agreement that may be in place between the Parties. No waiver of any provision shall be binding, in any event, unless executed in writing by the Party making the waiver, nor shall any waiver constitute a continuing waiver unless expressly stated in writing by the Party making the waiver. Notwithstanding anything expressly to the contrary herein, the Parties hereby reserve all rights and remedies, including the right to seek damages and/or equitable relief, for any un-cured breach of this Agreement by the other Party, and nothing herein releases, or should be deemed to release, any Party from its respective obligations under this Agreement and/or nothing herein prevents, or should be deemed to prevent, any Party from enforcing the terms and conditions of this Agreement against the other Party.

## 7   ASSIGNMENT AND CHANGE OF CONTROL

**7.1** **No Assignment**. Neither this Agreement, nor any rights and/or obligations created and/or resulting hereunder may be assigned, delegated, and/or otherwise transferred by Licensee, and Licensee hereby acknowledges and agrees that any such purported assignment, delegation, and/or transfer in violation of this Section shall be null and void.

**7.2** **Change of Control**. In the event of a change of control of Licensee through a merger and/or acquisition, this Agreement shall continue to benefit and obligate Licensee or the successor and/or acquiring entity, and the licenses granted in Subsection 2.7 may be transferred to such successor and/or acquiring entity, only where

    (i)    such licenses are limited in extension to only the Covered Products, and that part of the business of Licensee relating to the Covered Products prior to any such change of control through merger and/or acquisition, and are not extend to any machines, manufactures, compositions of matter, methods, processes, apparatuses, devices, hardware, software, firmware, applications, data, web sites, advertisements, images, documents, products, systems, and/or other products and/or services of the successor and/or acquiring entity other than solely as related to the Covered Products (or reasonable extensions of the foregoing and whether rebranded or not), and related part of the business of Licensee, that existed prior to any such change of control through merger or acquisition; and

    (ii)    the obligations of Licensee are similarly assigned.

Any assignment and/or transfer in violation of this Section shall be null and void. For the avoidance of doubt, if Licensee is acquired by and/or otherwise merges with another entity and ceases to exist, the licenses granted in Subsection 2.7 may be transferred to the extent provided in this Section. In the event of a corporate reorganization and/or corporate restructure wherein Licensee may change ownership, in full or in part, but shall otherwise remain a separate entity, the licenses granted in Subsection 2.7 shall endure, and the full benefit thereof shall remain with Licensee to the extent provided in this Section. Subject to the foregoing, this Agreement shall be binding upon, and inure to the benefit of, the Parties and their permitted successors and assigns. Except as set forth in this Section, this Agreement may not be assigned by Licensee without the prior written permission of Licensor, and any attempt to assign without such permission will be null and void.

## 8    LIMITATION ON RIGHTS GRANTED

**8.1**    **No Other Rights**. No rights, title, and/or interests are granted under any Symbology Patent except as expressly provided in this Agreement, whether by implication, estoppel, or otherwise.

**8.2**    **No Third Party Rights Granted**. No right to grant covenants, rights, and/or sublicenses, and/or to become a foundry for Third Parties is granted to either Licensee or Licensee's Affiliates under this Agreement.

**8.3**    **Future Enforcement Activity by Licensor**. In the event that Licensor brings a claim under the Symbology Patents against any Third Party Licensee, or any entity that claims that any Disputed Activity arises out of any communication, interaction, transaction, cooperation, and/or contractual obligation with, or on behalf of, Licensee, then upon Licensee providing written notice to Licensor, and sufficient written evidence to corroborate any such claim by a Third Party Licensee, then Licensor shall, within ten (10) days, cause such claim to be dismissed with respect to such Third Party Licensee, to the extent the claim is based on conduct that is properly subject to protection under any of Paragraphs 2.1, 2.2, 2.4, 2.5, and/or 2.7.

## 9    CONFIDENTIALITY, PUBLICITY MATERIAL, AND MARKETING

**9.1**    **Advertising and Reference to Parties**. Nothing in this Agreement shall confer upon any Party any right to include in advertising, packaging, and/or other commercial activities, any reference to any other Party in any manner whatsoever.

    9.2    **Confidentiality.** This Agreement, its contents, and any underlying negotiations thereto, shall remain strictly confidential and shall not be disclosed to any third party whatsoever, except for any Government Authority, the Parties' Representatives, management, officers, and board of directors, and the Parties' Affiliates and their Representatives, and except as required by law or order of court. Any Person identified in the preceding sentence to whom information concerning this Agreement is disclosed is bound by this confidentiality provision, and the disclosing Party shall make best efforts to ensure any such Person treats this Agreement, and its contents, to the same standard of confidences, and shall be liable for any breaches of confidentiality by Persons to whom the disclosing Party has disclosed information about this Agreement in accordance with this Paragraph. Nothing contained in this Paragraph shall prevent any Party from stating that the Parties have "entered into an agreement," provided, however, that in doing so, the Parties shall not disclose the payment made hereunder, or any details thereof, and shall not disclose any other terms, conditions, obligations, Sections, and/or Paragraphs of this Agreement. If any Document Request is received by any Party hereto calling for the production of this Agreement, or any contents thereof, such Party (the "Requested Party") shall promptly notify the other Party hereto (the "Non-Requested Party") prior to any disclosure of same. In such case, the requested Party shall: (a) make available, as soon as practicable (and, in any event, prior to disclosure), for inspection and copying, a copy of this Agreement it intends to produce pursuant to any such Document Request unless such disclosure is otherwise prohibited by law; and, (b) to the extent possible, shall not produce anything in response to any such Document Request for at least ten (10) Business Days following such notice. If necessary, Requested Party shall take appropriate actions to resist production, as permitted by law, so as to allow the Parties hereto to try to reach an agreement on what shall be produced. This Paragraph is a material part of this Agreement.

    9.3    **Non-Disparagement**. Unless required to do so by legal process, the Parties shall not make any disparaging statements or representations, either directly or indirectly, whether orally or in writing, by word or gesture, to any Person whatsoever, about the other Party or the other Party's Representatives or Affiliates and their Representatives, or any of their respective directors, officers, or employees. For purposes of this Paragraph, a disparaging statement or representation is any communication which, if publicized to another, would cause or tend to cause the recipient of the communication to question the business condition, integrity, competence, good character or morals, or product quality of the Person to whom the communication relates.

    9.4    **Survival**. Paragraphs 9.1, 9.2, and 9.3 above, respectively titled "Advertising and Reference to Parties," "Confidentiality," and "Non-Disparagement," shall survive any cancellation and/or termination of this Agreement for a period of six (6) years from the date of any such cancellation and/or termination.

    **10**    **REPRESENTATIONS, WARRANTIES, AND DISCLAIMERS**

    10.1    **Authority**. By signing below, each Party, and each Person signing this Agreement on behalf thereof, hereby represents, warrants, and covenants that said Party, or Person signing, has the full right, power, and authority, and has obtained all third-party consents, approvals, and/or other authorizations required, to enter into this Agreement, and to carry out its obligations hereunder, and the Person executing this Agreement has the full right, power, and authority, and has obtained all third-party consents, approvals, and/or other authorizations required, to bind such Party to the terms, conditions, and obligations of this Agreement, and that the Party's execution of this Agreement is not in violation of any by-law, covenant(s), and/or

other restrictions placed upon the Party, and/or the Person signing, by any respective entities.

10.2 **Title**. Licensor hereby represents, warrants, and covenants that, as of the Effective Date, Licensor (a) is the sole owner of the entire right, title, and interest in and to the Symbology Patents, including, without limitation, all rights, title, and interests to sue for infringement and enforce and sue for past damages; and (b) has all rights, title, and interests, including all necessary authority, to grant the covenants, releases, rights, and licenses hereunder.

10.3 **No Challenge of Symbology Patents**. Other than as required of Licensee by Court Order or rule of law, Licensee represents, warrants, and covenants that Licensee has not, and will not, and will so instruct its counsel and consultants retained regarding this dispute, if any, to not, on behalf of Licensee, challenge and/or contest, and/or assist in same, any claims of any Symbology Patent as being invalid, unpatentable, and/or unenforceable for any reason in any administrative, arbitration, judicial, or other proceeding.

10.4 **Mutual Disclaimer**. EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT, NEITHER LICENSOR NOR LICENSEE MAKES ANY COVENANTS, REPRESENTATIONS, AND/OR WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, OR ASSUMES ANY RESPONSIBILITIES WHATSOEVER WITH RESPECT TO THE COMMERCIAL SUCCESS, USE, SALE, AND/OR OTHER DISPOSITION BY OR FOR ANY OTHER PARTY (OR ANY SUBSIDIARIES OF THE FOREGOING) OR ANY DISTRIBUTORS, USERS, OTHER CUSTOMERS, AND/OR SUPPLIERS OF THE FOREGOING OF PRODUCTS INCORPORATING OR MADE BY THE USE OF INVENTIONS LICENSED HEREIN.

10.5 **Limitation of Liability**. EXCEPT IN THE EVENT OF LICENSOR'S INTENTIONAL MISREPRESENTATION, AND TO THE MAXIMUM EXTENT PERMITTED BY LAW, LIABILITY FOR EITHER PARTY ARISING FROM OR OTHERWISE RELATED TO THIS AGREEMENT WILL BE TO FIVE HUNDRED DOLLARS ($500.00 USD).

THIS LIMITATION OF LIABILITY SECTION APPLIES WHETHER THE ALLEGED LIABILITY RELATED TO THIS AGREEMENT IS BASED IN CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY, OR PRODUCT LIABILITY, FOR COVER, OR FOR ANY INCIDENTAL, INDIRECT, AND/OR CONSEQUENTIAL, MULTIPLIED, PUNITIVE, SPECIAL, AND/OR EXEMPLARY DAMAGES AND/OR LOSS OF REVENUE, PROFIT, SAVINGS AND/OR BUSINESS AND/OR ANY OTHER BASIS, EVEN IF THE PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE AND/OR LOSS.

THE PARTIES HEREBY ACKNOWLEDGE THAT THIS LIMITATION ON POTENTIAL LIABILITY WAS AN ESSENTIAL ELEMENT IN SETTING CONSIDERATION UNDER THIS AGREEMENT.

## 11   GENERAL TERMS

11.1 **Fees and Costs**. The Parties agree that they shall bear their own costs, expenses, and fees, including attorney's fees, relating to this Agreement, and the making thereof, including incurred as part of the Parties' prior and current efforts in resolving the underlying dispute and any underlying negotiations therefor, and for the Party's performance under this Agreement.

11.2 **Illegality of Provisions**. Nothing in this Agreement shall be construed as requiring the commission of any act contrary to any applicable law and/or regulation. Wherever there is any conflict between any provision of this Agreement and any statute, law, regulation, and/or ordinance, and/or any treaty and its valid regulations, the statute, law, regulation, ordinance, and/or treaty and its valid regulations shall prevail. In such event, the provisions of this Agreement in violation thereof shall be curtailed and limited only to the extent necessary to bring them within the legal requirements, and such provisions, so curtailed and limited, together with all other provisions of this Agreement, shall continue in full force and effect.

11.3 **Legally Binding Agreement**. The Parties intend this Agreement to be legally binding upon, and to insure to the benefit of, each of said Parties and their respective assigns, executors, administrators, heirs, and estates. This Agreement will not be binding upon the Parties until it has been signed hereinbelow by, or on behalf of, each Party, in which event, it shall be effective as of the Effective Date.

11.4 **Entire Agreement**. The recitals set forth at the beginning of this Agreement are incorporated herein by reference and made a part of this Agreement. Including in view of the foregoing, this Agreement constitutes the entire agreement and understanding of the Parties with respect to the subject matter hereof, and merges and supersedes all prior and/or contemporaneous agreements, understandings, negotiations, and discussions, whether proposed or otherwise, whether written or oral, and the Parties acknowledge and agree that neither of the Parties shall be bound by any conditions, definitions, warranties, understandings, or representations other than as expressly provided herein. Furthermore, the Parties acknowledge and agree that no modification of this Agreement shall be binding on either Party unless set forth in a writing signed by all Parties hereto.

11.5 **Governing Law; Venue/Jurisdiction**. This Agreement will be interpreted, construed, and enforced in all respects in accordance with the laws of the State of Florida, without reference to its choice of law principles to the contrary. Neither Party shall commence or prosecute any action, suit, proceeding, or claim arising under or by reason of this Agreement other than in the state or federal courts located in Florida. The Parties irrevocably consent to the jurisdiction and venue of the courts identified in this Paragraph in connection with any action, suit, proceeding, or claim arising under or by reason of this Agreement.

11.6 **Reliance on Own Counsel**. In entering into this Agreement, the Parties acknowledge and agree that each Party has been informed of their right to, and had an opportunity to, consult with their own, independent and/or in-house counsel, and, after such consultation, and/or waiver thereof by virtue of entering into this Agreement without such consultation despite such knowledge of said right and opportunity, have relied upon any legal advice provided by such counsel regarding this Agreement, including an understanding of the terms and conditions herein, which each Party further hereby acknowledges and agrees, including pursuant to the foregoing, are fully understood and voluntarily accepted by each Party; and that, other than the Consideration set forth herein, no promises and/or representations of any kind have been made to them by the other Party. The Parties further hereby acknowledge and agree that, in executing this Agreement, neither Party is relying, nor has relied, upon any representation and/or statement, whether oral or written, made by the other Party or by that other Party's Representatives with regard to the subject matter of this Agreement or otherwise.

11.7 **Captions; Interpretation**. The headings in this Agreement are for convenience and organization only, and not intended to constitute the substance of this Agreement and will

not be referred to in connection with the construction or interpretation of this Agreement. The captions appearing at the commencement of the Sections herein are descriptive only and for convenience of reference and shall not be deemed to affect, in any way, the meaning and/or interpretation of this Agreement or any provision therein. Should there be any conflict between, and/or dispute relating to, any such Section caption and the Paragraphs thereunder, the language of the Paragraphs, and not such caption, shall control and govern in the construction of this Agreement. No oral explanation or oral information by either Party hereto will later alter and/or otherwise affect the meaning or interpretation of this Agreement. The Parties further hereby acknowledge and agree that the language of this Agreement has been approved by any such independent and/or in-house counsel for each Party, and neither Party (nor their respective counsel) shall be deemed to be the draftsman of this Agreement, and, thus, any rule of construction to the effect that ambiguities are to be resolved against the drafting Party will not be applied in the interpretation of this Agreement. The words "include" and "including," and variations thereof, will not be deemed to be terms of limitation in this Agreement, but, rather, will be deemed to be followed by the words "not limited to" or "without limitation."

11.8   **Counterparts**. This Agreement may be executed by the Parties in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Such counterparts may be exchanged by fax, or scanned and exchanged by electronic mail, confirmed with printed copy, but shall be effective upon receipt of fax/electronic mail as applicable. The Parties agree that facsimile and/or scanned copies of signatures shall be deemed originals for all purposes hereof and that either Party may produce such copies, without the need to produce original signatures, to prove the existence of this Agreement in any proceeding brought hereunder.

11.9   **Relationship of Parties. The Parties hereto are independent contractors. Nothing in this Agreement shall be construed to create a partnership, joint venture, franchise, fiduciary, employment and/or agency relationship between the Parties. Unless otherwise expressly set forth herein, neither Party has any express or implied authority to assume or create any obligations on behalf of the other and/or to bind to any contract, agreement, and/or undertaking with any third party.**

11.10  **Severability**. If any term or provision of this Agreement is found and/or held by any Government Authority to be invalid, illegal, and/or unenforceable in any jurisdiction, such invalidity, illegality, and/or unenforceability shall not affect any other term or provision of this Agreement or invalidate and/or render unenforceable such term or provision in any other jurisdiction. Upon a determination that any term or other provision is invalid, illegal, and/or unenforceable, the Parties hereto shall negotiate in good faith to modify this Agreement in a writing signed by both Parties so as to affect the original intent of the Parties as closely as possible in a mutually acceptable manner in order that the transaction contemplated hereby be consummated as originally contemplated to the greatest extent possible.

11.11  **Marking**. Licensee asserts that it has not infringed any claim of the Symbology Patents and that it is not currently infringing any claim of the Symbology Patents, and, thus, no marking of any Covered Products is required.

11.12  **Notices**. To be effective, any notice, communication, authorization, designation, and/or request regarding, under, and/or in connection with this Agreement shall be in writing and shall be deemed duly given and/or served upon delivery and addressed as set forth below, or if not delivered due to refusal or failure to advise the other Party of a change of address, five (5) days after depositing such notice in the U.S. mail or one (1) day after depositing such

notice with an overnight courier. Either Party may notify the other in the foregoing manner of any other address to which such communications are to be addressed under this Agreement.

**To Licensor:**

Symbology Innovations, LLC
Attention: Outside Counsel
Renita S. Rathinam
rathinam@miplaw.com

C/C:
Attention: CEO
Leigh Rothschild
leigh@patentmgmt.com

**To Licensee:**

Discord, Inc.
Attention: Outside Counsel
Matthew J. Hawkinson
Mhawkinson @hycounsel.com

Or to such changed address as the addressee shall have specified by written notice in accordance with this provision.

[SIGNATURE LINE ON THE NEXT PAGE]

IN WITNESS THEREOF, intending to be legally bound, the Parties acknowledge and agree that each Party has carefully reviewed this Agreement, including after consultation with that Party's own counsel, or waiver thereof, and agree and accept all of the terms and conditions therein; and that the Parties hereby execute this Settlement and License Agreement as of the Effective Date.

**Licensor:**  
**Symbology Innovations, LLC**

By: _____

Name: _____

Title: _____

Date: _____

**Licensee:**  
**Discord Inc.**

By: _____

Name: _____

Title: _____

Date: _____

THIS AGREEMENT DOES NOT BIND OR OBLIGATE EITHER PARTY IN ANY MANNER UNLESS DULY EXECUTED BY AUTHORIZED REPRESENTATIVES OF BOTH PARTIES

FRE 408 COMMUNICATION

# EXHIBIT A: WIRE INSTRUCTIONS

Any payment made pursuant to this Agreement shall be made by Licensee to Licensor via use of the following bank wiring information:

Symbology Innovations, LLC
1 East Broward Boulevard, Suite 700
Fort Lauderdale, Florida 33301
Account No.: 4341799827

TD BANK
12620 Biscayne Boulevard
North Miami, Florida 33181
ABA Routing No.: 031101266
Swift No.: NRTHUS33XXX

*(Rest of page intentionally left blank)*

FRE 408 COMMUNICATION

**EXHIBIT B: LIST OF SYMBOLOGY PATENTS**

| U.S. Patent Number | Title of Patent and First Named Inventor |
|---|---|
| 7,992,773 | "System and method for presenting information about an object on a portable electronic device"<br>Leigh Rothschild |
| 8,424,752 | "System and method for presenting information about an object on a portable electronic device"<br>Leigh Rothschild |
| 8,651,369 | "System and method for presenting information about an object on a portable device"<br>Leigh Rothschild |
| 8,936,190 | "System and method for presenting information about an object on a portable electronic device"<br>Leigh Rothschild |

*(Rest of page intentionally left blank)*

FRE 408 COMMUNICATION

# EXHIBIT C: CURRENT AFFILIATES OF LICENSEE

Licensee hereby represents, warrants, and covenants that the following is a list of all of Licensee's Affiliates, as defined in the Agreement, and the ownership status and/or relationship to Licensee, as of the date of signature below.

If no Affiliates as defined in the Agreement, please indicate below.

| Affiliate Name | Ownership/Relation to Licensee |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

IN WITNESS THEREOF, this Exhibit B: Current Affiliates of Licensee is executed on the _____ day of _____, 20__ at _____.

**Licensee:**

By: _____

Name: _____

Title: _____

*(Rest of page intentionally left blank)*