# EXHIBIT 57



<div style="text-align: right">
Renita S. Rathinam<br>
Direct Dial: 1.202.253.4903<br>
rathinam@miplaw.com
</div>

November 28, 2023

**VIA EMAIL**
Matthew S. Warren
Warren Kash Warren
2261 Market St #606
San Francisco, CA 94114

**Re: Symbology Innovations, LLC and Discord Inc. (SLA Discussions    FRE 408)**

Dear Mr. Warren:

   Thank you for your letter of November 17, 2023.  We have reviewed and conferred with Symbology and respond as follows. As a general matter, Symbology continues in its hope to reach a mutually beneficial business solution with Discord in the near term. On the specifics of your letter, we appreciate your clarifications and confirm our understanding of Discord's present objectives:

   (1)  "[T]o pay a single amount in U.S. dollars; and
   (2)  For that single payment to cover "all assets owned by Leigh Rothschild companies"

*See* 11/17/23 Warren Letter. So that the parties are on the same page onward, we in turn clarify the record, including as to discussions and forward progress made with prior counsel, and provide our current understandings and thoughts on proceeding.

   **(1)  The present negotiation arises from certain Symbology patents and Discord's potential infringement thereof.**  Our negotiations originate from and pertain to Symbology's determinations that certain Discord products, activities and operations appear to infringe certain Symbology patents - U.S. Patent Numbers 7,992,773, 8,424,752, 8,651,369, and 8,936,190.  *See* February 15, 2023 correspondence package with letter invitation to discuss solutions.

   **(2)  Our firm represents Symbology Innovations, LLC**. We have never purported to represent any other entity owned or controlled by Mr. Rothschild, or with which Mr. Rothschild may be affiliated.  This is not, as you characterize it, "something new."  That you (or Mr. Hawkinson) may have concluded anything of this sort was not previously made known to us, and the basis for such is unclear.  In any case, this was certainly not an intended message, and we hope this point is now properly understood.  However, as discussed further herein, per your November 17 letter, we understand Discord's path for resolution to now lie only in a broader deal (covering assets in addition to those discussed).  After advising Symbology and considering appropriately, our firm is now authorized to negotiate such an arrangement.

M. Warren, Esq.
November 28, 2023
Page 2 of 3

**(3) Discord's original concern over other suits and reasonably foreseeable Discord products and activities.** We understood, as represented by the Hawkinson Chang firm on September 27, that Discord held a concern over potential lawsuits involving assets that might not be owned by Symbology Innovations, LLC – namely patent assets of entities controlled or owned by Mr. Rothschild – but which may be assertable against Discord based on its current and foreseeable activities related to Symbology technologies. Symbology, as a courtesy, was able to ascertain from appropriate entities that the only such potentially assertable patents are those owned/controlled by RFID. Symbology was also able to procure authorization from RFID to include said assets in an SLA. (*See* 10/17/23 Proposed, SLA Ex. B.)

Discord's objectives as discussed with prior counsel were thus achieved and addressed by way of our October 17 proposal. We additionally note that as a sign of goodwill, Symbology was able to workout the RFID asset inclusion while keeping with the consideration figure offered on July 5, 2023, prior to Discord raising any such concerns. *See also* my correspondence of November 3:

> *We understand that Discord is concerned about the assertion of* ***other*** *symbology-related technology patents by way of a different Rothschild controlled entity. As explained, our client, Symbology Innovations, LLC, has confirmed that any Rothschild owned/controlled patent assets related to such technologies and like-technologies that would be potentially assertable against Discord (based on known Discord activities and operations), have indeed been identified and are included in our 10/17/23 proposed SLA, Exhibit B.*

*See* 11/3/23 correspondence. We have additionally indicated many times our willingness to consider any clarifying redlines to the current proposed SLA for our consideration. *See e.g.*, *id.*

To separately address Discord's concern about future lawsuits regarding technology assets <u>later acquired or later developed by Symbology and Discord's "unknown but reasonably foreseeable"</u> products and activities as discussed by you on October 28, we proposed a CNS:

> *To address your broader concern about Discord's future unspecified activities and unspecified assets later acquired or developed by an affiliate entity of our client* [Symbology]*, we propose in addition to the SLA, entering into a separate stand-alone Covenant Not to Sue ("CNS"). We ask that you propose language at least categorically describing technologies that Discord views as foreseeably of interest. We would be willing to share the full list of patents of which our client is otherwise in control* **(unrelated to Symbology)** *– only if Discord has serious interest in entering into discussions on a broader agreement, and of course all subject to the terms of an NDA.)*

*See id.*

<div style="text-align: right">
M. Warren, Esq.<br>
November 28, 2023<br>
Page 3 of 3
</div>

**(4)  Discord's interest in a global deal covering all assets of all entities owned/controlled by Mr. Rothschild.** We understood from Mr. Hawkinson on September 27 and again from you on October 28, that Discord had a separate interest simply in knowing the figure for obtaining a global license for all assets of any entity controlled and/or owned by Mr. Rothschild, regardless of subject matter. We have explained that such would be a different negotiation with different entities.  To that end, in my November 3 correspondence and in our conversation of November 17, we requested your client's genuine interest "on the different issue of Leigh Rothschild controlled/owned entities and that universe of patented technologies."  *See id.*  Again, these assets would go to technologies <u>other than Symbology-related technologies</u>.

**(5)  Discord's present interest in only a global deal covering all assets of all entities owned/controlled b Mr. Rothschild.**  From your letter of November 17, 2023, we now understand Discord's current position to be that it will not negotiate a license with Symbology for the Symbology patents (and like technologies), alone.  Rather, Discord will only consider resolving the present issue by way of licensing said patents in the context of a global deal for assets of every entity controlled/owned by Mr. Rothschild.  We have advised Symbology accordingly and, as noted above, our firm is now authorized to negotiate such an arrangement.

Note that prior to November 17, our client had spent substantial time negotiating the 10/17 pending SLA with Discord, including undertaking necessary assessments and obtaining authorization for inclusion of the RFID patents therein. To be clear, we learned for the first time, last week, of Discord's broader-reaching position and willingness to resolve the current live infringement concern between Symbology and Discord in the context of a <u>global arrangement, only</u>.

While we will now endeavor to resolve this matter by way of a global agreement as desired by Discord, Symbology reserves all rights.  In that regard, we again reiterate that Symbology is entitled to enforce and/or reach resolutions concerning its own assets, and wishes to do so with Discord.  As we move forward, Symbology requests that its assets (previously offered for consideration at 30K) continue to be considered separate and apart from of any global deal with respect to assets of other entities pertaining to unrelated technologies.  We look forward to continuing our discussions.  Enclosed is a Mutual Confidentiality and Non-Disclosure Agreement for review and signature.

<div style="margin-left: 50%">
Sincerely,<br>
<br>
<br>
Renita S. Rathinam
</div>

Enclosures: as stated<br>
Cc: see distribution list

*Subject to FRE 408*



# MUTUAL CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT

This MUTUAL CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT (this "Agreement") is made and entered into as of the date of the last signatory below (the "Effective Date"), by and between Patent Asset Management, LLC, a Florida limited liability company, located at 1 East Broward Blvd, Suite 700, Fort Lauderdale, Florida 33301, and its wholly owned subsidiaries and affiliates, and on the other hand, Discord Inc., a Delaware corporation, with a place of business at 444 De Haro Street #200, San Francisco, CA 94107, (individually, a "Party"; collectively, the "Parties").

In consideration of the mutual promises set forth in this Agreement, the Parties hereby agree as follows:

1. **Purpose.** The Parties wish to exchange information to facilitate their efforts to consider developing a business relationship in relation to its patent portfolio (the "Subject Matter"). For purposes of this Agreement, when any of the foregoing occur, the Party receiving such Subject Matter is referred to as the "Receiver" and the Party disclosing such Subject Matter is referred to as the "Discloser." This Agreement is intended to permit each Party to freely disclose Confidential Information (as defined below) relating to the Subject Matter, while protecting the disclosed information, including Confidential Information, from unauthorized use or disclosure.

2. **Confidential Information Defined.** The term "Confidential Information" means any oral, written, graphic or electronic information that is identified as confidential at the time of its disclosure or subsequently, regardless whether marked as such, or that should reasonably be understood by the Receiver to be confidential, including that which relates to business models, business plans, financial statements, patents, patent applications, research, product plans, products, developments, inventions, processes, designs, drawings, engineering, formulae, markets, software (including source and object code), hardware configuration, computer programs, algorithms, regulatory information, business plans, third-party agreements, services, customers, marketing, sales, licensing, financial information, damages and financing models, claim charts and other evidence of use. Confidential Information may include information confidential to Discloser or information confidential to another that Discloser possesses under condition of confidentiality and that Discloser is authorized to disclose to Receiver under condition of confidentiality.

3. **Nondisclosure of Confidential Information.**

    (a)   Receiver agrees not to use any Confidential Information disclosed to it hereunder by Discloser for its own use or for any purpose other than in connection with the Parties'

consideration of the Subject Matter.  Apart from the undersigned representatives, agents, contractors and employees of Receiver who are required to have the information to carry out the Party's analysis and approvals in connection with the Subject Matter, Receiver shall not disclose or permit disclosure of any Confidential Information to third parties or to employees of Receiver without prior authorization and agreement of the Parties.  Each such third party or employee of Receiver shall be identified prior to disclosure and agreed by the Parties in writing (hereinafter referred to as "Authorized Recipient"). Any authorized disclosure by Receiver may then be made only after instructing all persons to receive the Confidential Information of the terms of this Agreement and providing a copy of Authorized Recipient's executed signature page of the same, reflecting his/her understanding of said terms and to accordingly be bound.  Receiver agrees that it will take all reasonable measures to protect the secrecy of Confidential Information and avoid disclosure or use of Confidential Information disclosed by Discloser in any manner that would jeopardize its confidentiality or risk it falling into the public domain. Receiver shall use the same level of care with Confidential Information disclosed by Discloser that Receiver uses to maintain its own business confidences, but in any event shall use at least reasonable care to secure Discloser's confidences. Receiver further agrees to notify Discloser in writing of any actual or suspected misuse, misappropriation, or unauthorized disclosure of Confidential Information.

(b) Notwithstanding the above, Receiver shall not have liability to Discloser with regard to any Confidential Information that:

  (i) was in the public domain at the time it was disclosed by Discloser or subsequently entered the public domain through no fault of Receiver;

  (ii) was known to Receiver, other than from Discloser, at the time it was disclosed by Discloser;

  (iii) is publicly disclosed with the prior express written approval of Discloser; or

  (iv) is disclosed pursuant to the order or requirement of a court, administrative agency or other governmental body; provided, however, that Receiver shall provide prompt notice of any effort by a third-party to access such Confidential Information and of any court order or other disclosure requirement, and shall cooperate with Discloser in connection with protecting the confidentiality of such information at Discloser's request.

4. **Duplication; Return of Materials.**  Receiver agrees that, except as otherwise authorized by Discloser and to the minimum extent necessary to enable its employees, agents and contractors to do the work necessary to evaluate the Subject Matter, it will not make any copies or duplicates of any Confidential Information except as is necessary in connection with the Subject Matter. Any information provided by Discloser to Receiver hereunder (including all copies thereof but excluding cloud- based backups of Confidential Information that is not accessible in the course of daily business) shall be promptly returned to the

*Subject to FRE 408*

Discloser within 30 days after the written request of the Discloser. In lieu of returning such information, or in the case of electronically stored information, Receiver shall destroy all records constituting, containing, or derived from Confidential Information and certify that it has done so to Discloser.

Notwithstanding the foregoing, Receiver may retain copies of any Confidential Information to the extent required to comply with applicable audit, legal or compliance requirements, and the destruction obligation need not extend to archived computer files or back-up tapes; provided such information is maintained in confidence by Receiver and is not accessible in the course of daily business.

5. **Term.** This Agreement shall become effective on the Effective Date and, shall remain in effect until terminated by either party by written notice, and shall be applicable to any Confidential Information so long as such information remains within the definition thereof in Section 2, above. The foregoing commitments of each Party shall survive the termination of this Agreement.

6. **Governing Law: Jurisdiction.** This Agreement and all acts and transactions pursuant hereto shall be governed, construed, and interpreted in accordance with the laws of the State of Florida without giving effect to principles of conflicts of laws. Each of the Parties consents to jurisdiction and venue of the courts of Broward County, Florida.

7. **Scope of Agreement.** The Parties hereby acknowledge and agree that this Agreement only obligates the Parties with respect to the treatment and protection of Confidential Information. This Agreement is not a commitment by either Party to enter into any other contract, agreement, or business relationship with the other Party, or to purchase, transfer, or otherwise dispose of any technology, services, or products. This Agreement does not create any agency, partnership, or joint venture relationship between the Parties.

8. **Remedies**. The Parties each agree that the obligations of Receiver set forth in this Agreement are necessary and reasonable to protect Confidential Information and the business of Discloser. The Parties agree that monetary damages would be inadequate to compensate Discloser for any breach by Receiver of the covenants and agreements set forth herein. Accordingly, each Party agrees and acknowledges that any violation of this Agreement will cause the Discloser irreparable harm and that, in addition to other available remedies, Discloser shall be entitled to obtain injunctive relief against the threatened or ongoing wrongful disclosure by Receiver, without needing to prove actual damages.

9. **Severability**. The Parties acknowledge and agree that, should any provision or provisions of this Agreement be held to be invalid by a court of any competent jurisdiction before which enforcement of this Agreement is sought, such invalidity shall not invalidate the whole of

*Subject to FRE 408*

this Agreement, and the remaining portions or provisions hereof shall not be affected thereby.

10. **Counterparts**. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.

11. **Notices**. All notices and communications shall be in writing sent to a Party at the address listed on the signature page hereof or at such other address as the Party may designate in writing, and they may be delivered by email (effective when sent) or by hand or courier (effective on delivery).

The parties, individually or through their duly authorized representatives, execute and deliver this Agreement as of the last date signed below (the "Effective Date").

| **Patent Asset Management, LLC** | **Discord, Inc.** |
|---|---|
| By: _____ <br><br> Name: <br> Title: <br> Email: <br><br> Date: _____ | By: _____ <br><br> Name: <br> Title: <br> Email: <br><br> Date: _____ |
| **Authorized Recipient** <br><br> By: _____ <br><br> Name: <br> Title: <br> Email: <br><br> Date: _____ | **Authorized Recipient** <br><br> By: _____ <br><br> Name: <br> Title: <br> Email: <br><br> Date: _____ |

*Subject to FRE 408*

|  |  |
|---|---|
|  |  |
|  |  |