# EXHIBIT 72

# AGREEMENT BETWEEN
# ROTHSCHILD PATENT IMAGING, LLC, LEIGH ROTHSCHILD, AND THE GNOME FOUNDATION.

This Agreement ("Agreement"), dated as of the date of signature of the last signatory below (the "Effective Date"), is entered into by and between, on the one hand, Leigh Rothschild, an individual ("Rothschild"), and Rothschild Patent Imaging LLC, a Texas limited liability company with a principal place of business at 1400 Preston Road, Suite 400, Plano, Texas 75093 ("Grantor") and, on the other hand, the Gnome Foundation, with a principal place of business at #117 21 Orinda Way C, Orinda, CA 94563 ("Grantee") (Grantor and Grantee may be individually referred to as "Party" and collectively as "Parties");

WHEREAS, Grantor owns all right, title, and interest in and to United States Patent No. 9,936,086 ("the '086 patent");

WHEREAS, Rothschild is the named inventor on more than 100 patents and applications, and has the right and authority to grant, or cause other entities to grant, binding covenants not to sue, releases and licenses with respect to the patents and patent applications on which he is a named inventor;

WHEREAS Rothschild desires to support the open source community generally and the Parties view this support to be a material part of this Agreement

NOW THEREFORE, for valuable consideration, the receipt and sufficiency of which is acknowledged, and other consideration as set forth below, Grantor, Rothschild, and Grantee agree as follows:

**DEFINITIONS**

"**Affiliate(s)**" of an Entity shall mean any and all Entities, past, present, or future, that are or were Controlled, directly, by the Entity, but only for so long as such Control existed or exists.

"**Claims**" shall mean any and all claims, counterclaims, third-party claims, contribution claims, indemnity claims, demands, actions, liabilities, damages, losses, causes of action, and all other claims of every kind and nature in law or equity, whether arising under state, federal, international or other law.

"**Control**" shall mean the legal, beneficial, and/or equitable ownership of or ability to control more than fifty percent (50%) of (i) the voting power representing the right to vote for directors or other managing authority, (ii) equity ownership interest in an Entity, or (iii) other ownership interest in an Entity.

"**Effective Date**" shall have the meaning ascribed to it in the preamble.

"**Entity**" shall mean a corporation, association, partnership, business trust, joint venture, limited liability company, proprietorship, unincorporated association, individual or other entity that can exercise independent legal standing.

**"Grantor Patent(s)"** means (i) the '086 patent; (ii) all patents and patent applications to which any of the foregoing claim priority, whether directly or indirectly and are assigned to Grantor on the execution date of this Agreement; (iii) all patents and patent applications to which any of the foregoing are otherwise related by virtue of a claim of priority, whether directly or indirectly, to a common patent or patent application and are assigned to Grantor on the execution date at the execution of this Agreement; (iv) all issued patents, patent applications, reissues, reexaminations, certificates of correction, extensions, divisionals, continuations, and continuations-in-part in any country that at any time claimed priority from, or that otherwise relate back to or are in any way derived from, any of the foregoing and are assigned on the execution date of this Agreement to Grantor; (v) all foreign patents and patent applications, utility models and inventor's certificates corresponding to or claiming priority to or from any of the foregoing and are assigned on the execution date of this Agreement to Grantor; and (vi) all patents presently owned by Grantor  (including any continuations, divisionals, and continuations-in-part therefrom).

**"Rothschild Entit(y)(ies)"** means Rothschild together with every entity that he directly or indirectly Controls and/or that owns a Rothschild Patent in whole or in part.

**"Rothschild Patent(s)"** means (i) any and all Patents that name Leigh Rothschild as an inventor, whether or not currently in existence; (ii) all patents and patent applications to which any of the foregoing claim priority, whether directly or indirectly and are owned on the execution date of this Agreement by Leigh Rothschild or a Rothschild Entity; (iii) all patents and patent applications to which any of the foregoing are otherwise related by virtue of a claim of priority, whether directly or indirectly, to a common patent or patent application and are owned on the execution date of this Agreement by Leigh Rothschild or a Rothschild Entity; (iv) all issued patents, patent applications, reissues, reexaminations, certificates of correction, extensions, divisionals, continuations, and continuations-in-part in any country that at any time claimed priority from, or that otherwise relate back to or are in any way derived from, any of the foregoing and are owned on the execution date of this Agreement by Leigh Rothschild or a Rothschild Entity; (v) all foreign patents and patent applications, utility models and inventor's certificates corresponding to or claiming priority to or from any of the foregoing and are owned on the execution date of this Agreement by Leigh Rothschild or a Rothschild Entity.  Notwithstanding any provision in this paragraph, Rothschild Patent(s) shall include only those patents where Leigh Rothschild or a Rothschild Entity is the majority owner or assignee of the patents and not those patents where Rothschild is named with another inventor or inventors and not those patents that neither Rothschild nor a Rothschild Entity majority owns or controls.

**"Open Source Initiative Approved Software"** means the software that is subject to the licenses approved by the Open Source Initiative as of May 13, 2020 as reflected on the website: https://opensource.org/licenses/alphabetical, as well as subsequent versions of any such license (a list as of May 13 is included on Schedule 2).  For a subsequent version of any such license to be considered "Open Source Initiative Approved Software," it must satisfy the following objective criteria:

1) A license shall not restrict any party from selling or giving away the software as a component of an aggregate software distribution containing programs from several different sources;

2) A license shall not require a royalty or other fee for such sale;

3) A program must include source code, and must allow distribution in source code as well as compiled form, where some form of a product is not distributed with source code, there must be a well-publicized means of obtaining the source code for no more than a reasonable reproduction cost, preferably downloading via the Internet without charge. The source code must be the preferred form in which a programmer would modify the program. Deliberately obfuscated source code is not allowed. Intermediate forms such as the output of a preprocessor or translator are not allowed;

4) A license must allow modifications and derived works,

5) A license to modifications and derived works must allow them to be distributed under the same terms as the license of the original software;

6) A license may restrict source-code from being distributed in modified form only if the license allows the distribution of "patch files" with the source code for the purpose of modifying the program at build time;

7) Any rights attached to a program must apply to all to whom the program is redistributed without the need for execution of an additional license by those parties;

8) Any rights attached to a program must not depend on the program's being part of a particular software distribution. If the program is extracted from that distribution and used or distributed within the terms of the program's license, all parties to whom the program is redistributed should have the same rights as those that are granted in conjunction with the original software distribution;

9) A license must not place restrictions on other software that is distributed along with the licensed software. For example, the license must not insist that all other programs distributed on the same medium must be open-source software; and

10) No provision of a license may be predicated on any individual technology or style of interface.

A list of "Open Source Initiative Approved Software" licenses as of May 13, 2020 (all of which are covered under this Agreement) is attached in Schedule 2. A licensed version that is approved by the Open Source Initiative is rebuttably presumed to have met the above objective criteria.

**TERMS**

1. Incorporation of Recitals. The recitals and definitions set forth above are hereby incorporated into, and are made a part of, this Agreement.

2. Rothschild Covenant Not to Sue.

   a. Rothschild, on behalf of himself and the Rothschild Entities, grants a non-exclusive, fully paid-up, irrevocable covenant not to sue (i) Grantee and its Affiliate(s) for any Claim of patent infringement including without limitation with respect to the Rothschild Patent(s), provided that Grantee and its Affiliates, as the case may be, are and remain non-profit organizations; and (ii) any individual or entity anywhere in the world for infringement of the Rothschild Patents solely with respect to Open Source Initiative Approved Software where the Open Source Initiative Approved Software is the material basis for a claim of infringement of the Rothschild Patent(s). The term "material basis" means that the primary focus of the claim of infringement is predicated on the Open Source Initiative Approved Software. By way of example, a material basis would exist where the Open Source Initiative Approved Software is the sole inventive concept of the allegedly infringing product.

   b. Grantee shall have the right to assign this Agreement and the rights in this Section 2 to anyone anywhere in the world and upon the consent of Rothschild, such consent not to be unreasonably withheld. Said assignment shall apply solely with respect to Open Source Initiative Approved Software where the Open Source Initiative Approved Software is the material basis for a claim of infringement of the Rothschild Patent(s). The term "material basis" means that the primary focus of the claim of infringement is predicated on the Open Source Initiative Approved Software. By way of example, a material basis would exist where the Open Source Initiative Approved Software is the sole inventive concept of the allegedly infringing product. No valid assignment shall provide any rights that exceed the rights in this Section 2(b).

  3. Attorneys' Fees, Expenses, and Costs. The Parties agree that they shall bear their own costs, expenses, and attorneys' fees relating to the negotiation of this Agreement.

  4. Transferability.

   This Agreement does not include the right to assign or otherwise transfer the rights granted to any third party without Grantor's express prior written consent, such consent not to be unreasonably withheld and subject to Section 5(b), except that Grantee shall have the right to assign or otherwise transfer the rights granted in connection with a merger or sale of substantially all assets of Grantee or Grantee's Affiliate; provided that any assignment of the rights under this Agreement in connection with a merger or sale of substantially all assets of Grantee shall only extend to the licensed activities and products of Grantee and/or Grantee's Affiliates that are the subject to this Agreement as of the date of the sale, transfer or spin-off (and natural evolutions and future versions of those activities and products) and will not extend to any other products, services or activities conducted by an assignee or any of its affiliates, subsidiaries, related entities or related companies prior to, on or after the effective date of the assignment except with respect to the same type of relevant activities and products that were conducted by Grantee and/or Grantee's Affiliates. This agreement will not apply if the Grantee shall merge or be purchased by a for profit company. Grantor and Rothschild each agrees that if they attempt to sell, assign, or otherwise transfer one or more of the Grantor Patent(s) or the Rothschild Patent(s), respectively, that sale, assignment or transfer shall be subject to the terms of this Agreement and that they shall so inform any buyer, assignee, or transferee.

5. Releases.

a. Release by Rothschild Relating to Open Source Initiative Software.

1) Subject to the terms and conditions of this Agreement, Rothschild, on behalf of himself and the Rothschild Entities, hereby releases and discharges: (i) Grantee and its Affiliate(s) from any Claim of patent infringement, including with respect to the Rothschild Patents, provided that Grantee and its Affiliates, as the case may be, are and remain non-profit organizations; and (ii) every individual and entity everywhere in the World from all Claims of infringement of the Rothschild Patents solely with respect to Open Source Initiative Approved Software where the Open Source Initiative Approved Software is the material basis for a claim of infringement of the Rothschild Patent(s). The term "material basis" means that the primary focus of the claim of infringement is predicated on the Open Source Initiative Approved Software. By way of example, a material basis would exist where the Open Source Initiative Approved Software is the sole inventive concept of the allegedly infringing product.

2) Grantee shall have the right to assign this Agreement and the rights in this Section 5 to anyone anywhere in the world and upon the consent of Rothschild, such consent not to be unreasonably withheld. Said assignment shall apply solely with respect to Open Source Initiative Approved Software where the Open Source Initiative Approved Software is the material basis for a claim of infringement of the Rothschild Patent(s). The term "material basis" means that the primary focus of the claim of infringement is predicated on the Open Source Initiative Approved Software. By way of example, a material basis would exist where the Open Source Initiative Approved Software is the sole inventive concept of the allegedly infringing product. No valid assignment shall provide any rights that exceed the rights in this Section 5(b)(2).

b. No Assignment of Claims. Each Party represents and warrants to the other Party that, as of the Effective Date, no claim of any kind relating to the subject matter of this Agreement has been assigned or otherwise transferred (voluntarily or involuntarily) in any manner.

6. Representations and Warranties.

a. By Rothschild: Rothschild personally represents and warrants (i) he has full power and authority to enter into this Agreement, on behalf of himself, and the other entities that are subject to the definition of "Rothschild Entities," (ii) he has full power and authority to grant the Covenant Not to Sue and Release from Rothschild above, (iii) that he owns the Rothschild Patents or directly or indirectly controls each entity that owns or has any right or title in each of the Rothschild Patent; and (iii) he has not entered into any other contracts, agreements, or obligations that would conflict with this Agreement.

b. By Grantee. Grantee represents and warrants that (i) it has full power and authority to enter into this Agreement, and (ii) this Agreement is a valid and binding agreement of Grantee enforceable against it in accordance with its terms.

c. No Party shall be liable for any special, indirect, incidental or consequential damages, even if informed of the possibility thereof in advance, that result from this Agreement. These limitations apply to all causes of action in the aggregate, including without limitation, breach

5

of contract, breach of warranty, negligence, strict liability, misrepresentation and other torts, loss of profit, loss of business, loss of savings or other loss.

      d.     If Grantor or Rothschild or any valid assignee of this Agreement materially breaches this Agreement, such breach shall not be considered a breach of this Agreement if (i) Grantor or Rothschild, as the case may be, is provided with written notice of the breach, and (ii) Grantor or Rothschild, as the case may be, cures it within 15 calendar days of such written notice.

      e.     If Grantee or any valid assignee of this Agreement materially breaches this Agreement, such breach shall not be considered a breach of this Agreement if (i) Grantee, or any valid assignee is provided with written notice of the breach, and (ii) the breach is cured within 15 calendar days of such written notice.

      f.     It shall be considered a breach of this Agreement by Grantee, if a Grantee Affiliate acts in a manner that would be considered a breach of this Agreement if such action was taken by Grantee. Notwithstanding the foregoing a Grantee Affiliate's breach shall not be considered a breach of this Agreement if (i) Grantee and Grantee Affiliate, or any valid assignee of either, is provided with written notice of the breach, and (ii) the breach is cured within 15 calendar days of such written notice.

      7.     Limitation of Liability.

      (a)     Neither Party shall be liable to the other Party, and Grantor shall not be liable to any Grantee's predecessors, parents, and/or Affiliates, for any special, indirect, incidental or consequential damages, even if informed of the possibility thereof in advance, that arise from the Grantor Patents, including without limitation any such damages arising from any and all act(s) that were raised, or could have been raised, on or before the Effective Date. These limitations apply to all causes of action arising from the Grantor Patents or the Action in the aggregate, including without limitation, breach of contract, breach of warranty, negligence, strict liability, fraud, misrepresentation and other torts, loss of profit, loss of business, loss of savings or other loss.

      (b)     In no event shall Grantor or its successors or assigns be liable to Grantee, its predecessors, parents, and/or Affiliates for payment of damages for any amount that exceeds the aggregate total amount actually paid to Grantor under the terms of this Agreement, for any claim arising under or related to the Grantor Patents or this Agreement. Grantee expressly consents to this limitation of Grantor's liability for all actions and inactions by Grantor or its successors or assigns. In the event a lawsuit is brought against Grantee or its Affiliates in breach of this Agreement and Grantor or its successor or assign fails to dismiss the lawsuit within the 15 calendar day period of Section 6(c), this limitation of liability shall not apply to damages arising from Grantor's or its successor's or assign's failure to dismiss.

      (c)     If any lawsuit is filed against Grantee, its predecessors, parents, assignees of this Agreement, and/or Affiliates of the releases granted herein, Grantee agrees to provide Grantor with notice and an opportunity to cure by dismissing or causing the dismissal of the lawsuit within fifteen (15) calendar days of Grantor's receipt of such notice, and Grantee, its predecessors,

parents, assignees of this Agreement, and/or Affiliates agree not to seek damages or any other compensation from Grantor if the lawsuit is dismissed within fifteen (15) calendar days.

8. Taxable Donation.

   a. Grantee Representations and Warranties. Grantee represents and warrants that: (i) it is a charitable organization as defined by US IRS code; (ii) except as may otherwise be provided herein, Grantee did not provide any goods or services in exchange for the contribution of this license; Grantee agrees to substantiate the contribution with a contemporaneous written acknowledgment, as described and to execute form 8283 in substantially the same form as attached here to as Schedule 3 upon request by Grantor and in any event prior to the end of the current taxable year.

   b. Grantor and Rothschild Representations and Warranties, Gratuitous Intent. Grantor represents and warrants that: (i) Grantor's and Rothschild's release and license is a Gift to Grantee; (ii) Grantor and Rothschild did not receive any goods or services in exchange for such Gift; (iii) Grantor and Rothschild agree to substantiate the contribution by engaging an independent qualified appraiser to perform a qualified appraisal of the license and have the same execute IRS form 8283 in substantially the same form as attached here to as Schedule 3; and (iv) Grantor and Rothschild agree to execute form 8283 in substantially the same form as attached here to as Schedule 3.

   c. Grantee – Execution. Failure to satisfy Section 8(a) shall be deemed a material breach of this Agreement and Grantor and Rothschild shall provide written notice of said material breach to Grantee. Grantee shall have thirty (30) days to cure said material breach.

   d. Failure to Cure Material Breach under Section 8(c). In the event that Grantee does not cure said material breach under Section 8(c), then Grantor and/or Rothschild shall have the right to:

   (i) pursue in court as allowed under this Agreement for any and all claims, as well as attorneys' fees, for said uncured breach of this Agreement;

   (ii) terminate this Agreement with written notice to Grantee; or

   (iii) both (i) and (ii).

9. Miscellaneous.

   a. Severability. Nothing contained herein shall be construed so as to require the commission of any act contrary to law, and wherever there is any conflict between any provisions contained herein and any present or future statute, law, ordinance, or regulation, the latter shall prevail; but the provision of this Agreement which is affected shall be curtailed and limited only to the extent necessary to bring it within the requirements of the law.

   b. Further Assurances. Each of the Parties shall execute and deliver any and all additional papers, documents, and other assurances, and shall do any and all acts and things

reasonably necessary in connection with the performance of their obligations hereunder to carry out the intent of the Parties.

   c. Modifications or Amendments. No amendment, change, or modification of this Agreement shall be valid, unless in writing and signed by the Parties.

   d. Entire Agreement. This Agreement constitutes the entire understanding and agreement of the Parties with respect to the subject matter in this Agreement and any and all prior agreements, understandings, or representations with respect to its subject matter are hereby terminated and canceled in their entirety and are of no further force or effect, *provided however* that this Agreement shall not terminate, cancel, reduce or contravene any covenants not to sue relating to the patents recited herein or between the Parties.

   e. Non-Waiver. No waiver by any Party hereto of a breach of any provision of this Agreement shall constitute a waiver of any preceding or succeeding breach of the same or any other provision hereof.

   f. Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The execution and delivery of counterparts of this Agreement, by facsimile or electronic means or by original manual signature, regardless of the means or any such variation in pagination or appearance shall be binding upon the parties executing this Agreement.

   g. Captions. The captions appearing at the commencement of the sections hereof are descriptive only and for convenience in reference. Should there be any conflict between any such caption and the section at the head of which it appears, the section and not such caption shall control and govern in the construction of this Agreement.

   h. Non-Agency. Nothing in this Agreement is intended or shall be deemed to constitute a partnership, agency, employer-employee, or joint venture relationship between Grantor and Grantee. Neither Grantor nor Grantee shall incur any debts or make any commitments binding on the other.

   10. Non-Disparagement and Press Release

The Parties agree that they will not, at any time, whether in private or in public, directly or indirectly, make, publish, encourage, ratify or authorize, or aid, assist or direct any other person or entity in making or publishing any statements that in any way defame, criticize, malign, impugn, reflect negatively on or disparage any other Party. Nothing in this section shall prevent the Parties from disclosing the actual Agreement itself, discussing the results of the Action, commenting that the Parties have settled their disputes, that they are pleased with the results, or making similar statements about the outcome of the Action. Notwithstanding this paragraph, except where the disclosure is made to a person or entity that is arguably covered by the Releases or Covenants herein, the disclosing party shall obtain prior consent from the non-disclosing party to disclose the Agreement or its terms, such consent not being unreasonably withheld with the condition that the person or entity that is arguably covered by the Release or Covenants herein shall also agree to keep the agreement confidential. Withholding of consent to disclose this Agreement to a

competitor, opposing party in a litigation, or opposing counsel in a litigation absent an order of a court of competent jurisdiction shall not be considered unreasonable.

The Parties may issue the Press Release attached as Schedule 1.

11. No Challenge To Validity. Except as set forth in Section 5 herein, and to the extent Grantor is not in breach of this Agreement, Grantee, its predecessors, parents, Affiliates, and any assignee of this Agreement hereby agree, and shall agree, not to initiate any further proceeding (including any reexamination or *inter partes* review) or lawsuit in which it alleges or claims that the Grantor Patents are invalid or unenforceable. Nor shall Grantee, its predecessors, parents, Affiliates, and any assignee of this Agreement litigate, and shall promise not to litigate, any claims or other rights that could have been litigated in the Matter or may have arisen due to litigation of the Matter. Grantee, its predecessors, parents, Affiliates, and any assignee of this Agreement further agree, and shall agree, that it shall not otherwise voluntarily assist or support any other person or entity in connection with a challenge of the validity or enforceability of the Grantor Patents in any proceeding (including any reexamination or *inter partes* review), appeal, or lawsuit in any forum. This provision does not preclude Grantee, its predecessors, parents, or Grantee's Affiliates from providing information as may be required by Court order, law, or judicial process. Grantee, its predecessors, parents, Grantee's Affiliates, assignees of this Agreement, or any of their customers, may assert defenses of invalidity and/or unenforceability and/or seek reexamination or *inter partes* review of the Grantor Patents in the event that Grantee, its predecessors, parents, assignees of this Agreement, or Grantee's Affiliates are accused of infringing such Grantor Patent in the future. Moreover, the Grantor's and Rothschild's Releases and Covenant (as to Rothschild) above may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit or other proceeding that may be instituted, prosecuted, maintained or attempted in breach of the Grantor's and Rothschild's Releases and Covenants Not to Sue.

12. Governing Law. This Agreement shall be governed and the terms and conditions herein construed according to the laws of the State of Florida without regard to that state's body of law controlling conflicts of law.

13. Notice. Any notice or communication required or permitted to be given by either Party hereunder shall be in written form and shall be considered to be sufficiently given if mailed by registered or certified mail or transmitted by overnight courier, addressed to the Parties hereto as follows:

To Grantor and Rothschild:

>**Rothschild Patent Imaging LLC**
>c/o Kizzia Johnson
>Kizzia Johnson PLLC
>1910 Pacific Ave, Ste 13000
>Dallas, TX  75201
>jay@kjpllc.com

9

With copy to:

    **Rothschild Patent Imaging LLC**
    c/o Catherine Delcin, Vice President & General Counsel
    1801 NE 123rd Street
    North Miami, FL 33181
    cdelcin@patentmgmt.com

To Grantee:

    **The GNOME Foundation**
    #117 21C Orinda Way
    Orinda, CA 94563

With a copy to:

    **Matt Berkowitz**
    Shearman & Sterling LLP
    1460 El Camino Real
    2nd Floor
    Menlo Park, CA 94025
    Matt.berkowitz@shearman.com

Or to such changed address as the addressee shall have specified by written notice in accordance with this provision.

    14.    If any provision of this Agreement is held to be illegal or unenforceable, such provision shall be limited or eliminated to the minimum extent necessary so that the remainder of this Agreement will continue in full force and effect and be enforceable. The Parties agree to negotiate in good faith to enforce a substitute provision for any invalid or unenforceable provision that most nearly achieves the intent of such provision.

    *    *    *

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

**Rothschild Patent Imaging LLC**

By: _____

Name: Leigh M. Rothschild

Title: Managing Director

Date: May 20, 2020

**Gnome Foundation**

By: _____
FAE6623AC009493...

Name: Neil McGovern

Title: Executive Director

Date: 5/20/2020

**Leigh Rothschild**

_____

Date: May 20, 2020

11

# SCHEDULE 1

## APPROVED PRESS RELEASE

Today, on the 13th of May 2020, the GNOME Foundation, Rothschild Patent Imaging, and Leigh M. Rothschild are pleased to announce that the patent dispute between Rothschild Patent Imaging and GNOME has been settled.

In this walk-away settlement, GNOME receives a release and covenant not to be sued for any patent held by Rothschild Patent Imaging. Further, both Rothschild Patent Imaging and Leigh Rothschild are granting a release and covenant to any software that is released under an existing Open Source Initiative approved license (and subsequent versions thereof), including for the entire Rothschild portfolio of patents, to the extent such software forms a material part of the infringement allegation.

Neil McGovern, Executive Director for the GNOME Foundation said "I'm exceptionally pleased that we have concluded this case. This will allow us to refocus our attention on creating a free software desktop, and will ensure certainty for all free and open source software in future."

Leigh Rothschild said "I'm pleased that we have managed to settle this issue amicably. I have always supported the innovation of open source software and its developers and encourage its innovation and adoption."

**About Gnome Foundation (Optional for Each Party)**

**About Patent Asset Management and Leigh M. Rothschild (Optional for Each Party)**

**Statement About Counsel Representation (Optional for Each Party)**

## SCHEDULE 2

## LICENSES APPROVED BY THE OPEN SOURCE INITIATIVE

- 0-clause BSD License (0BSD)
- 1-clause BSD License (BSD-1-Clause)
- 2-clause BSD License (BSD-2-Clause)
- 3-clause BSD License (BSD-3-Clause)
- Academic Free License 3.0 (AFL-3.0)
- Adaptive Public License (APL-1.0)
- Apache Software License 1.1 (Apache-1.1) (superseded)
- Apache License 2.0 (Apache-2.0)
- Apple Public Source License (APSL-2.0)
- Artistic license 1.0 (Artistic-1.0) (superseded)
- Artistic License 2.0 (Artistic-2.0)
- Attribution Assurance License (AAL)
- Boost Software License (BSL-1.0)
- BSD License: See
  - *3-clause BSD License*
  - *2-clause BSD License*
  - *1-clause BSD License*
  - *0-clause BSD license*
  - *BSD-3-Clause-LBNL*
- BSD+Patent (BSD-2-Clause-Patent)
- CeCILL License 2.1 (CECILL-2.1)
- Common Development and Distribution License 1.0 (CDDL-1.0)
- Common Public Attribution License 1.0 (CPAL-1.0)
- Common Public License 1.0 (CPL-1.0) (superseded)
- Computer Associates Trusted Open Source License 1.1 (CATOSL-1.1)
- Cryptographic Autonomy License v.1.0 (CAL-1.0)
- CUA Office Public License Version 1.0 (CUA-OPL-1.0) (retired)
- Eclipse Public License 1.0 (EPL-1.0) (superseded)
- Eclipse Public License 2.0 (EPL-2.0)
- eCos License version 2.0 (eCos-2.0)
- Educational Community License, Version 1.0 (ECL-1.0) (superseded)
- Educational Community License, Version 2.0 (ECL-2.0)
- Eiffel Forum License V1.0 (EFL-1.0) (superseded)
- Eiffel Forum License V2.0 (EFL-2.0)
- Entessa Public License (Entessa)
- EU DataGrid Software License (EUDatagrid)
- European Union Public License 1.2 (EUPL-1.2) (*links to every language's version on their site*)
- Fair License (Fair)
- Frameworx License (Frameworx-1.0)
- GNU Affero General Public License version 3 (AGPL-3.0)

13

- GNU General Public License version 2 (GPL-2.0)
- GNU General Public License version 3 (GPL-3.0)
- GNU Lesser General Public License version 2.1 (LGPL-2.1)
- GNU Lesser General Public License version 3 (LGPL-3.0)
- Historical Permission Notice and Disclaimer (HPND)
- IBM Public License 1.0 (IPL-1.0)
- Intel Open Source License (Intel) (retired)
- IPA Font License (IPA)
- ISC License (ISC)
- Jabber Open Source License (retired)
- LaTeX Project Public License 1.3c (LPPL-1.3c)
- Lawrence Berkeley National Labs BSD Variant License (BSD-3-Clause-LBNL)
- Licence Libre du Québec – Permissive (LiLiQ-P) version 1.1 (LiliQ-P)
- Licence Libre du Québec – Réciprocité (LiLiQ-R) version 1.1 (LiliQ-R)
- Licence Libre du Québec – Réciprocité forte (LiLiQ-R+) version 1.1 (LiliQ-R+)
- Lucent Public License ("Plan9"), version 1.0 (LPL-1.0) (superseded)
- Lucent Public License Version 1.02 (LPL-1.02)
- Microsoft Public License (MS-PL)
- Microsoft Reciprocal License (MS-RL)
- MirOS Licence (MirOS)
- MIT License (MIT)
- MITRE Collaborative Virtual Workspace License (CVW) (retired)
- Motosoto License (Motosoto)
- Mozilla Public License 1.0 (MPL-1.0) (superseded)
- Mozilla Public License 1.1 (MPL-1.1) (superseded)
- Mozilla Public License 2.0 (MPL-2.0)
- Mulan Permissive Software License v2 (MulanPSL - 2.0)
- Multics License (Multics)
- NASA Open Source Agreement 1.3 (NASA-1.3)
- Naumen Public License (Naumen)
- Nethack General Public License (NGPL)
- Nokia Open Source License (Nokia)
- Non-Profit Open Software License 3.0 (NPOSL-3.0)
- NTP License (NTP)
- OCLC Research Public License 2.0 (OCLC-2.0)
- Open Group Test Suite License (OGTSL)
- Open Software License 1.0 (OSL-1.0) (superseded)
- Open Software License 2.1 (OSL-2.1) (superseded)
- Open Software License 3.0 (OSL-3.0)
- OpenLDAP Public License Version 2.8 (OLDAP-2.8)
- OSET Public License version 2.1
- PHP License 3.0 (PHP-3.0)
- The PostgreSQL License (PostgreSQL)
- Python License (Python-2.0) (overall Python license)
- CNRI Python license (CNRI-Python) (CNRI portion of Python License)
- Q Public License (QPL-1.0)

14

- RealNetworks Public Source License V1.0 (RPSL-1.0)
- Reciprocal Public License, version 1.1 (RPL-1.1) (superseded)
- Reciprocal Public License 1.5 (RPL-1.5)
- Ricoh Source Code Public License (RSCPL)
- SIL Open Font License 1.1 (OFL-1.1)
- Simple Public License 2.0 (SimPL-2.0)
- Sleepycat License (Sleepycat)
- Sun Industry Standards Source License (SISSL) (retired)
- Sun Public License 1.0 (SPL-1.0)
- Sybase Open Watcom Public License 1.0 (Watcom-1.0)
- Universal Permissive License (UPL)
- University of Illinois/NCSA Open Source License (NCSA)
- Upstream Compatibility License v1.0
- Vovida Software License v. 1.0 (VSL-1.0)
- W3C License (W3C)
- wxWindows Library License (WXwindows)
- X.Net License (Xnet)
- Zero-Clause BSD / Free Public License 1.0.0 (0BSD)
- Zope Public License 2.0 (ZPL-2.0)
- zlib/libpng license (Zlib)

15

| Form **8283** (Rev. November 2019) Department of the Treasury Internal Revenue Service | **Noncash Charitable Contributions** ▶ Attach one or more Forms 8283 to your tax return if you claimed a total deduction of over $500 for all contributed property. ▶ Go to *www.irs.gov/Form8283* for instructions and the latest information. | OMB No. 1545-0908 Attachment Sequence No. **155** |
|---|---|---|
| Name(s) shown on your income tax return | | Identifying number |

**Note:** Figure the amount of your contribution deduction before completing this form. See your tax return instructions.

**Section A. Donated Property of $5,000 or Less and Publicly Traded Securities**—List in this section **only** an item (or groups of similar items) for which you claimed a deduction of $5,000 or less. Also list publicly traded securities and certain other property even if the deduction is more than $5,000 (see instructions).

| Part I | Information on Donated Property—If you need more space, attach a statement. |
|---|---|

| 1 | **(a)** Name and address of the donee organization | **(b)** If donated property is a vehicle (see instructions), check the box. Also enter the vehicle identification number (unless Form 1098-C is attached). | **(c)** Description and condition of donated property (For a vehicle, enter the year, make, model, and mileage. For securities and other property, see instructions.) |
|---|---|---|---|
| A | | ☐ | |
| B | | ☐ | |
| C | | ☐ | |
| D | | ☐ | |
| E | | ☐ | |

**Note:** If the amount you claimed as a deduction for an item is $500 or less, you do not have to complete columns (e), (f), and (g).

| | **(d)** Date of the contribution | **(e)** Date acquired by donor (mo., yr.) | **(f)** How acquired by donor | **(g)** Donor's cost or adjusted basis | **(h)** Fair market value (see instructions) | **(i)** Method used to determine the fair market value |
|---|---|---|---|---|---|---|
| A | | | | | | |
| B | | | | | | |
| C | | | | | | |
| D | | | | | | |
| E | | | | | | |

| Part II | **Partial Interests and Restricted Use Property**—Complete lines 2a through 2e if you gave less than an entire interest in a property listed in Part I. Complete lines 3a through 3c if conditions were placed on a contribution listed in Part I; also attach the required statement (see instructions). |
|---|---|

**2a** Enter the letter from Part I that identifies the property for which you gave less than an entire interest ▶ _____
If Part II applies to more than one property, attach a separate statement.

**b** Total amount claimed as a deduction for the property listed in Part I: **(1)** For this tax year ▶ _____
**(2)** For any prior tax years ▶ _____

**c** Name and address of each organization to which any such contribution was made in a prior year (complete only if different from the donee organization above):

Name of charitable organization (donee)
_____

Address (number, street, and room or suite no.)
_____

City or town, state, and ZIP code
_____

**d** For tangible property, enter the place where the property is located or kept ▶ _____
**e** Name of any person, other than the donee organization, having actual possession of the property ▶ _____

|  |  | Yes | No |
|---|---|---|---|
| **3a** | Is there a restriction, either temporary or permanent, on the donee's right to use or dispose of the donated property? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| **b** | Did you give to anyone (other than the donee organization or another organization participating with the donee organization in cooperative fundraising) the right to the income from the donated property or to the possession of the property, including the right to vote donated securities, to acquire the property by purchase or otherwise, or to designate the person having such income, possession, or right to acquire? . . . . . . . . . . . . . . . . | | |
| **c** | Is there a restriction limiting the donated property for a particular use? . . . . . . . . . . . . . | | |

For Paperwork Reduction Act Notice, see separate instructions.    Cat. No. 62299J    Form **8283** (Rev. 11-2019)

Form 8283 (Rev. 11-2019) Page **2**

Name(s) shown on your income tax return | Identifying number

**Section B. Donated Property Over $5,000 (Except Publicly Traded Securities, Vehicles, Intellectual Property or Inventory Reportable in Section A)**—Complete this section for one item (or a group of similar items) for which you claimed a deduction of more than $5,000 per item or group (except contributions reportable in Section A). Provide a separate form for each item donated unless it is part of a group of similar items. A qualified appraisal is generally required for items reportable in Section B. See instructions.

**Part I**     Information on Donated Property

**4**    Check the box that describes the type of property donated.

    **a** ☐ Art* (contribution of $20,000 or more)    **d** ☐ Art* (contribution of less than $20,000)    **g** ☐ Collectibles**    **j** ☐ Other
    **b** ☐ Qualified Conservation Contribution    **e** ☐ Other Real Estate    **h** ☐ Intellectual Property
    **c** ☐ Equipment    **f** ☐ Securities    **i** ☐ Vehicles

*Art includes paintings, sculptures, watercolors, prints, drawings, ceramics, antiques, decorative arts, textiles, carpets, silver, rare manuscripts, historical memorabilia, and other similar objects.
**Collectibles include coins, stamps, books, gems, jewelry, sports memorabilia, dolls, etc., but not art as defined above.
**Note:** In certain cases, you must attach a qualified appraisal of the property. See instructions.

| 5 | (a) Description of donated property (if you need more space, attach a separate statement) | (b) If any tangible personal property or real property was donated, give a brief summary of the overall physical condition of the property at the time of the gift | (c) Appraised fair market value |
|---|---|---|---|
| A | | | |
| B | | | |
| C | | | |
| D | | | |

| | (d) Date acquired by donor (mo., yr.) | (e) How acquired by donor | (f) Donor's cost or adjusted basis | (g) For bargain sales, enter amount received | See instructions | |
|---|---|---|---|---|---|---|
| | | | | | (h) Amount claimed as a deduction | (i) Date of contribution |
| A | | | | | | |
| B | | | | | | |
| C | | | | | | |
| D | | | | | | |

**Part II**     **Taxpayer (Donor) Statement**—List each item included in Part I above that the appraisal identifies as having a value of $500 or less. See instructions.

I declare that the following item(s) included in Part I above has to the best of my knowledge and belief an appraised value of not more than $500 (per item). Enter identifying letter from Part I and describe the specific item. See instructions. ▶

Signature of taxpayer (donor) ▶                                                 Date ▶

**Part III**     Declaration of Appraiser

I declare that I am not the donor, the donee, a party to the transaction in which the donor acquired the property, employed by, or related to any of the foregoing persons, or married to any person who is related to any of the foregoing persons. And, if regularly used by the donor, donee, or party to the transaction, I performed the majority of my appraisals during my tax year for other persons.

Also, I declare that I perform appraisals on a regular basis; and that because of my qualifications as described in the appraisal, I am qualified to make appraisals of the type of property being valued. I certify that the appraisal fees were not based on a percentage of the appraised property value. Furthermore, I understand that a false or fraudulent overstatement of the property value as described in the qualified appraisal or this Form 8283 may subject me to the penalty under section 6701(a) (aiding and abetting the understatement of tax liability). I understand that my appraisal will be used in connection with a return or claim for refund. I also understand that, if there is a substantial or gross valuation misstatement of the value of the property claimed on the return or claim for refund that is based on my appraisal, I may be subject to a penalty under section 6695A of the Internal Revenue Code, as well as other applicable penalties. I affirm that I have not been at any time in the three-year period ending on the date of the appraisal barred from presenting evidence or testimony before the Department of the Treasury or the Internal Revenue Service pursuant to 31 U.S.C. 330(c).

**Sign Here**    Signature ▶                              Title ▶                         Date ▶

Business address (including room or suite no.)                                         Identifying number

City or town, state, and ZIP code

**Part IV**     **Donee Acknowledgment**—To be completed by the charitable organization.

This charitable organization acknowledges that it is a qualified organization under section 170(c) and that it received the donated property as described in Section B, Part I, above on the following date ▶

Furthermore, this organization affirms that in the event it sells, exchanges, or otherwise disposes of the property described in Section B, Part I (or any portion thereof) within 3 years after the date of receipt, it will file **Form 8282,** Donee Information Return, with the IRS and give the donor a copy of that form. This acknowledgment does not represent agreement with the claimed fair market value.

Does the organization intend to use the property for an unrelated use? . . . . . . . . . . . . . . . ▶ ☐ Yes    ☐ No

Name of charitable organization (donee) | Employer identification number

Address (number, street, and room or suite no.) | City or town, state, and ZIP code

Authorized signature | Title | Date

Form **8283** (Rev. 11-2019)

17