1  Matthew S. Warren (State Bar No. 230565)
2  Erika H. Warren (State Bar No. 295570)
   Francesca M. S. Germinario (State Bar No. 326208)
3  24-703@cases.warrenlex.com
   WARREN KASH WARREN LLP
4  2261 Market Street, No. 606
   San Francisco, California, 94114
5  +1 (415) 895-2940
   +1 (415) 895-2964 facsimile
6
   *Attorneys for Defendant Discord Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DISPLAY TECHNOLOGIES, LLC, | Case No. 5:24-cv-00703-PCP |
| Plaintiff, | **RESPONSE TO SUPPLEMENTAL FILING BY DEFENDANT DISCORD INC.** |
| v. | |
| DISCORD INC., | |
| Defendant. | |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.     Discord Submitted Evidence Showing That Leigh Rothschild and Patent Asset Management Each Have Unfettered Rights to License All Patents Owned by Any Entity Controlled by Patent Asset Management or Leigh Rothschild . . . . . . . . . . . . . . . . . 1

II.    Plaintiff Provided No Evidence to Support Its Claim of Standing to Sue . . . . . . . . . . . . . . . . . . . . 2

III.   Plaintiff's Attorney Argument is Incorrect Both Factually and Legally . . . . . . . . . . . . . . . . . . . . . 3

    A.     Patent Asset Management and Mr. Rothschild Both Offered to License, Actually Licensed, and Continue to Offer to License the Patents Held By the Rothschild Entities, Repeatedly Using the Word "License" to Do So . . . . . . . . . . . . . . . . . . . . . . . 4

    B.     A Covenant Not to Sue is a Non-Exclusive License as a Matter of Law . . . . . . . . . . . . . . 6

    C.     Plaintiff Cannot Make Up a New Meaning of the Term "Covenant Not to Sue" . . . . . . . . 7

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**TABLE OF AUTHORITIES**

*Cases* **Pages**

*Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*,
　　604 F.3d 1354 (Fed. Cir. 2010)............................................. 1, 4

*Armory v. Delamirie*,
　　1 Strange 505, 93 Eng. Rep. 664 (K.B. 1722) ................................. 3

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*,
　　434 F.3d 1336 (Fed. Cir. 2006) ............................................ 2, 4

*Bernahl v. Eversheds Sutherland Ltd.*,
　　No. 23-411, — F. Supp. 3d. —, 2023 WL 6796022 (N.D. Cal. Oct. 13, 2023)........ 2

*Burns v. Mammoth Media, Inc.*,
　　No. 20-4855, 2021 WL 3500964 (C.D. Cal. Aug. 6, 2021) ........................ 3

*Carolina Power & Light Co. v. Uranex*,
　　451 F. Supp. 1044 (N.D. Cal. 1977) ........................................... 3

*Cheng v. Speier*,
　　609 F. Supp. 3d 1046 (N.D. Cal. 2022), *aff'd*, No. 22-16170, 2023 WL 4490352
　　(9th Cir. July 12, 2023) ..................................................... 2

*Cox v. CSX Intermodal, Inc.*,
　　732 So. 2d 1092 (Fla. Dist. Ct. App. 1999) ................................... 8

*Dow Jones & Co. v. Ablaise Ltd.*,
　　606 F.3d 1338 (Fed. Cir. 2010) ............................................... 8

*Energy Innovation Co., LLC v. NCR Corp.*,
　　No. 18-3919, 2018 WL 7050840 (N.D. Ga. Nov. 29, 2018) ........................ 3

*Flynn v. FCA US LLC*,
　　39 F.4th 946 (7th Cir. 2022) ................................................. 3

*Haddock v. Countrywide Bank, N.A.*,
　　No. 14-6452, 2014 WL 12597043 (C.D. Cal. Dec. 22, 2014) ...................... 3

*Harris v. KM Indus., Inc.*,
　　980 F.3d 694 (9th Cir. 2020) ................................................. 2

*Indus. Tectonics, Inc. v. Aero Alloy*,
　　912 F.2d 1090 (9th Cir. 1990) ................................................ 2

*Innovus Prime, LLC v. Panasonic Corp.*,
　　No. 12-660, 2013 WL 3354390 (N.D. Cal. July 2, 2013) ......................... 7

*UAW v. NLRB*,
　　459 F.2d 1329 (D.C. Cir. 1972) ............................................... 3

# TABLE OF AUTHORITIES
*(continued)*

*Cases* **Pages**

*Intellectual Tech LLC v. Zebra Techs. Corp.*,
　　No. 22-2207, — F. 4th. —, 2024 WL 1897130 (Fed. Cir. May 1, 2024) . . . . . . . . . . . . . . . . 1, 4

*Leite v. Crane Co.*,
　　749 F.3d 1117 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Molon Motor & Coil Corp. v. Nidec Motor Corp.*,
　　946 F.3d 1354 (Fed. Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*NCP Lake Power, Inc. v. Fla. Power Corp.*,
　　781 So. 2d 531 (Fla. Dist. Ct. App. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*NLRB v. Serv. Emps. Union Loc. 77, Serv. Emps. Int'l Union, AFL-CIO*,
　　No. 83-7193, 1986 WL 236051 (9th Cir. Nov. 25, 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Ortho Pharm. Corp. v. Genetics Inst., Inc.*,
　　52 F.3d 1026 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
　　849 F.3d 1360 (Fed. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*S. Pac. Transp. Co. v. Santa Fe Pac. Pipelines, Inc.*,
　　74 Cal. App. 4th 1232 (Cal. Ct. App. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Securus Techs. Inc. v. Glob. Tel\*Link Corp.*,
　　676 F. App'x 996 (Fed. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Stock W., Inc. v. Confederated Tribes of the Colville Rsrv.*,
　　873 F.2d 1221 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Therasense, Inc. v. Becton, Dickinson & Co.*,
　　No. 04-2123, 2008 WL 2323856 (N.D. Cal. May 22, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
　　563 F.3d 1271 (Fed. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*URI, Inc. v. Kleberg Cnty.*,
　　543 S.W.3d 755 (Tex. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*V-Formation, Inc. v. Benetton Grp. SpA*,
　　No. 02-2259, 2006 WL 650374 (D. Colo. Mar. 10, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Statutes & Rules*

Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Secondary Sources*

J. Wigmore, EVIDENCE § 285 (3d ed. 1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Robert A. Matthews, Jr., 5 ANNOTATED PATENT DIGEST § 35:32.50 (2024). . . . . . . . . . . . . . . . . . 7

## INTRODUCTION

Both Patent Asset Management and Leigh Rothschild have unfettered rights to license patents held by subsidiaries of Patent Asset Management (including plaintiff here), and those rights destroy the standing of those subsidiaries to bring patent infringement actions (including this one). Discord's motion explained this, plaintiff failed to respond to Discord's points, and the Court indulged plaintiff with an additional opportunity to provide "any further evidence in support of their opposition." Plaintiff now responds with no additional evidence, but with an admission: that both Patent Asset Management and Leigh Rothschild have unfettered rights to grant "a covenant not to sue" covering patents held by "subsidiaries under the control of PAM," including plaintiff Display Technologies, LLC.

Having made this admission, plaintiff hangs its hat on a single argument: that "a covenant not to sue" is "NOT A PATENT LICENSE" and thus cannot destroy standing to sue. Bellicose capitalization notwithstanding, plaintiff is incorrect both factually and legally. Factually, Patent Asset Management and Mr. Rothschild offered to license, actually licensed, and continue to offer to license the Rothschild Entities' patents, repeatedly using the word "license." Legally, courts have long held that a covenant not to sue is a non-exclusive license, whether or not it uses that word. Even if Patent Asset Management and Mr. Rothschild had never used the word "license," their admitted unfettered ability to grant covenants not to sue would still destroy the Rothschild Entities' standing to bring infringement claims.

Plaintiff's supplemental filing thus confirms what Discord has said all along: Patent Asset Management and Leigh Rothschild have unfettered rights to license patents held by subsidiaries of Patent Asset Management (including plaintiff here), and those rights destroy the standing of those subsidiaries to bring infringement actions (including this one). The Court should dismiss this action.

## ARGUMENT

**I. Discord Submitted Evidence Showing That Leigh Rothschild and Patent Asset Management Each Have Unfettered Rights to License All Patents Owned by Any Entity Controlled by Patent Asset Management or Leigh Rothschild**

As the patent owner, plaintiff Display Technologies, LLC cannot have standing to assert infringement claims if another party has the "unfettered ability" to license "accused infringers," thus rendering the "right to sue illusory." *Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354, 1362 (Fed. Cir. 2010); *see Intellectual Tech LLC v. Zebra Techs. Corp.*, No. 22-2207, — F. 4th.

—, —, 2024 WL 1897130, at *6 (Fed. Cir. May 1, 2024); *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1342 (Fed. Cir. 2006); Docket No. 34 at 2-8. Discord brought a "factual Rule 12(b)(1) motion," *Bernahl v. Eversheds Sutherland Ltd.*, No. 23-411, — F. Supp. 3d. —, —, 2023 WL 6796022, at *1 (N.D. Cal. Oct. 13, 2023), presenting evidence that Patent Asset Management and Leigh Rothschild have the unfettered ability to license all patents owned by companies under their ownership or control (the "Rothschild Entities"). *See generally* Docket Nos. 19-21, 25-26.[1]

## II. Plaintiff Provided No Evidence to Support Its Claim of Standing to Sue

Plaintiff's supplemental filing contains no evidence at all. Docket No. 33. Plaintiff's strategic decision to withhold its evidence is fatal to standing here.[2] "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes of the Colville Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989). "The party asserting jurisdiction has the burden of proving all jurisdictional facts." *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990). Even with no obligation to provide anything beyond "reasoned argument," *Harris v. KM Indus., Inc.*, 980 F.3d 694, 700 (9th Cir. 2020), Discord provided fulsome evidence showing that Patent Asset Management and Leigh Rothschild have unfettered rights to license patents held by the Rothschild Entities. *See* Docket Nos. 19-21, 25-26. Plaintiff's election to provide no evidence in response confirms that the evidence it has must be terrible for its case: "as far back as 1722 when it was applied in the famous case of the chimney sweep's jewel," courts have understood that

---

[1] Throughout this brief, Exhibits 1-73 are to the first Germinario declaration, Docket No. 20; Exhibits 74-77 are to the second Germinario declaration, Docket No. 26; Exhibits 78 and up are to the third Germinario declaration, filed concurrently with this memorandum.

[2] Although it should not matter, there can be no doubt that plaintiff knew of its obligation "to provide proof of jurisdiction 'under the same evidentiary standard that governs in the summary judgment context,'" and nevertheless chose not to provide any evidence. *Cheng v. Speier*, 609 F. Supp. 3d 1046, 1051 (N.D. Cal. 2022), *aff'd*, No. 22-16170, 2023 WL 4490352 (9th Cir. July 12, 2023) (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)). Discord reminded plaintiff of this obligation shortly after filing its motion, *see* Ex. 75, but plaintiff failed to include any evidence in its opposition brief. *See* Docket No. 24. Discord noted this failure in its reply brief. *See* Docket No. 25 § I. At the hearing of May 16, the Court reiterated plaintiff's obligation, *see* Docket No. 34 at 8-10, and generously gave plaintiff a week to file "any further evidence that they want to submit in support of their opposition," noting that "it would have to be evidence, you know, declarations and other evidence," not "another opposition brief." *Id.* at 10:7-8, 13:6-8. The Court re-reiterated plaintiff's obligation in its written Order of later that day, which stated that "Plaintiff shall file any further evidence in support of their opposition by 5/23/2024." Docket No. 30. After four reminders—two from Discord and two from the Court—plaintiff elected not to submit any evidence in its supplemental filing. *See* Docket No. 33.

"when a party has relevant evidence within his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to him." *UAW v. NLRB*, 459 F.2d 1329, 1336 (D.C. Cir. 1972) (citing *Armory v. Delamirie*, 1 Strange 505, 93 Eng. Rep. 664 (K.B. 1722); J. Wigmore, EVIDENCE § 285 (3d ed. 1940)); *see also, e.g.*, *NLRB v. Serv. Emps. Union Loc. 77, Serv. Emps. Int'l Union, AFL-CIO*, No. 83-7193, 1986 WL 236051, at *17 n.6 (9th Cir. Nov. 25, 1986) (citing and following *Int'l Union*); *Carolina Power & Light Co. v. Uranex*, 451 F. Supp. 1044, 1055-56 (N.D. Cal. 1977) (same). Discord's reply warned that plaintiff withheld evidence "like a fox," Docket No. 25 at 4:7, and plaintiff's repetition of its decision to withhold all its evidence, despite the Court's reminder and re-reminder of its obligation to provide it, eliminates any other explanation.

Although most parties seeking jurisdiction provide evidence in response to a factual attack, Discord has located a few cases where they did not—every one of which ended with dismissal. In *Burns v. Mammoth Media, Inc.*, No. 20-4855, 2021 WL 3500964 (C.D. Cal. Aug. 6, 2021), defendant moved to dismiss and submitted a single declaration. *Id*. at *2. Plaintiff submitted no evidence in return, but argued that the "declaration is not sufficient to raise a factual challenge because it does not cast doubt on the veracity of any of Plaintiff's allegations." *Id*. at *3. The Court found that "Plaintiff has failed to meet his burden to respond to Defendant's evidence with any competent proof," and dismissed the case. *Id.* at *4; *see also Flynn v. FCA US LLC*, 39 F.4th 946, 951-52, 954 (7th Cir. 2022) (affirming dismissal for lack of subject matter jurisdiction where plaintiffs "responded to the dismissal motion but did not call the court's attention to any evidence"); *Haddock v. Countrywide Bank, N.A.*, No. 14-6452, 2014 WL 12597043, at *3-4 (C.D. Cal. Dec. 22, 2014) (dismissing where "Plaintiff did not furnish any evidence to rebut" defendant's factual attack on jurisdiction). Plaintiff's decision to withhold its evidence may well be rational given what the evidence would show, but its choice has consequences that plaintiff cannot avoid, including inability to maintain standing to sue. The Court should dismiss this action.

### III. Plaintiff's Attorney Argument is Incorrect Both Factually and Legally

Instead of the required evidence, plaintiff submits a page-long attorney argument, claiming that Patent Asset Management and Mr. Rothschild "provided NOT A PATENT LICENSE, but a covenant not to sue." Docket No. 33 at 2:5; *see generally id*. Plaintiff does not really explain the implications of this statement, but appears to argue that the unfettered right to grant covenants not to sue—which it

concedes Mr. Rothschild and Patent Asset Management possess over "subsidiaries under the control of PAM"—does not affect standing under *Alfred E. Mann*, *Aspex Eyewear*, and *Intellectual Tech*. Docket No. 33 at 2:2; *see id.* at 1:26 to 2:5. Plaintiff is wrong both factually and legally.

### A. Patent Asset Management and Mr. Rothschild Both Offered to License, Actually Licensed, and Continue to Offer to License the Patents Held By the Rothschild Entities, Repeatedly Using the Word "License" to Do So

Plaintiff's argument depends on the magic of words: it admits that Mr. Rothschild and Patent Asset Management possess the unfettered ability to grant "a covenant not to sue" any patent owned by any "subsidiaries now under PAM," but claims that "there is no evidence before this Court that" either Mr. Rothschild or Patent Asset Management has ever "issue[d] a third party a license to patents owned by a subsidiary." Docket No. 33 at 2:2, 2:5, 2:11-12; *see generally id*. But this is not true: both Patent Asset Management and Mr. Rothschild explicitly offered to license, actually did license, and continue to offer to license the Rothschild Entities' patents, using the word "license" every time. Because these communications occur behind a veil of confidentiality, Discord can access only its own and those that otherwise became public—but, tellingly, every example Discord can find shows Patent Asset Management and Mr. Rothschild offering and providing licenses to the Rothschild Entities' patents, using that word.

Discord has found two licenses for Rothschild patents in the public record. The first is a global license to Valve. Ex. 69; *see* Docket No. 19 § C.1. It defines Leigh Rothschild as "Inventor" (Ex. 69 at 1), defines "Licensor" to include "Inventor" (*id.*), and states that:

> Licensor hereby grants to Licensee and Licensee's Affiliates a non-exclusive, non-transferable (except as provided for in Section 7.1), perpetual, irrevocable, royalty-free, fully paid-up, worldwide **license**, without the right to sublicense, in and to the Licensed Patents.

*Id.* § 3.1 (emphasis added). Plaintiff does not address or acknowledge the word "license," but states only that "a different signature block exists for Display Technologies, LLC." Docket No. 33 at 2:14-15. Plaintiff's meaning is not clear, but to the extent plaintiff argues that Display Technologies granted a license and Leigh Rothschild did not, that argument cannot survive either the definition of "Licensor" or the signature block itself, which confirms that Mr. Rothschild issued a license "on his own and on behalf of all entities listed as 'Assignee' in Exhibit C," including plaintiff here. Ex. 69 at 14, 18-19. Nor can this argument survive plaintiff's own statements in litigation against Valve, where it confirmed that

Valve "has a fully paid-up, irrevocable license" from parties including Mr. Rothschild. Ex. 78 at 5:11-12; *see id.* at 5:2-4. Mr. Rothschild's global license to Valve is a license, using that word.

The second public license is Mr. Rothschild's global license covering open source software (Ex. 72; *see* Docket No. 19 § C.2), which uses "license" and "covenant not to sue" interchangeably. As Discord explained in its motion (Docket No. 19 § C.2 & n.2) the global license covering open source software stated that "Rothschild, on behalf of himself and the Rothschild Entities, grants a nonexclusive, fully paid-up, irrevocable covenant not to sue" (Ex. 72 § 2.a) but then repeatedly referred to this grant as a "license." It stated that "any assignment of the rights under this Agreement in connection with a merger or sale of substantially all assets of Grantee shall only extend to the licensed activities and products of Grantee and/or Grantee's Affiliates that are the subject to this Agreement" (*id.* § 4), that "Grantor's and Rothschild's release and license is a Gift to Grantee" (*id.* § 8.b); that "Grantee did not provide any goods or services in exchange for the contribution of this license" (*id.* § 8.a); and, likely most importantly to Mr. Rothschild, that "an independent qualified appraiser" will "perform a qualified appraisal of the license and have the same execute IRS form 8283," substantiating Mr. Rothschild's tax deduction. (*Id.* § 8.b). The global license covering open source software is a license, using that word.

Mr. Rothschild and Patent Asset Management continue to this day to offer licenses to the Rothschild Entities' patents, using the word "license" to do so. Again, most of these communications are hidden from Discord's view; again, the few available examples uniformly confirm Mr. Rothschild and Patent Asset Management as licensors. On March 15, 2022, a representative of Patent Asset Management wrote to Valve Corporation noting that "[o]ur company"—singular—"has acquired a number of valuable patent assets in the past few years," and "I'd like to propose an opportunity to enter into a new agreement with PAM." Ex. 79. The Rothschild defendants described this email in court papers as "the Director of Business Development at PAM contacted Plaintiff to see whether Plaintiff would be interested in obtaining a license to other patents owned and/or controlled by Mr. Rothschild" (Ex. 78 at 6:17-19), and later reiterated that Patent Asset Management "offered Valve the opportunity to obtain a license to 'a number of valuable patent assets [that PAM had acquired] in the past few years.'" Ex. 80 at 8:15-16 (alteration in original). Similarly, in negotiations with Discord before plaintiff filed this action, counsel proposed "broader alternative arrangements" including "a global license to the 100+

patent portfolio; a license to the 100+ portfolio and future patents into perpetuity" (Ex. 54), and, "[o]n the different issue of Leigh Rothschild controlled/owned entities and that universe of patented technologies," and suggested a "global structure whereby Discord takes a license to all of such patents (or perhaps a obtaining a CNS with respect to the same)." Ex. 55; *see generally* Docket No. 19 § B. Finally, less than four months ago, the Rothschild Entities described Patent Asset Management as "quite successful in its endeavors, licensing hundreds of patents to date." Ex. 78 at 6:10-11.

In their licensing correspondence, the licenses themselves, and their court papers in other cases, the Rothschild Entities have confirmed and reconfirmed that both Leigh Rothschild and Patent Asset Management have unfettered rights to license any patent held by any Rothschild Entity. Plaintiff's contrary assertion in its supplemental brief, presented without evidence or citation, is simply wrong.

### B. A Covenant Not to Sue is a Non-Exclusive License as a Matter of Law

Plaintiff's argument also fails legally. Seeking to minimize its admission that Patent Asset Management and Mr. Rothschild have unfettered rights, plaintiff claims that those rights allow granting of only "a covenant not to sue," which is "NOT A PATENT LICENSE." Docket No. 33 at 2:5. Once again, plaintiff is incorrect. As courts have long recognized, the difference between a license and a covenant not to sue "is only one of form, not substance." *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1276 (Fed. Cir. 2009). Because "the grant of a patent does not provide the patentee with an affirmative right to practice the patent but merely the right to exclude," and because "one cannot convey what one does not own," a patentee, "by license or otherwise, cannot convey an affirmative right to practice a patented invention by way of making, using, selling, etc.; the patentee can only convey a freedom from suit." *Id.* at 1275. As a result, the Federal Circuit has "frequently recognized that a (non-exclusive) license to practice a patent is in substance nothing but a covenant not to sue: what such a license is, at its core, is an elimination of the potential for litigation." *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1370 (Fed. Cir. 2017) (citing *TransCore*, 563 F.3d at 1275-76); *see also, e.g.*, *Molon Motor & Coil Corp. v. Nidec Motor Corp.*, 946 F.3d 1354, 1360-61 (Fed. Cir. 2020) ("A covenant not to sue is equivalent to a nonexclusive or 'bare' license, which is a promise by the patent owner not to sue the licensee for practicing the patented invention, and under which the patent owner impliedly reserves the right to grant similar nonexclusive licenses to other

entities."); *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1032 (Fed. Cir. 1995) (same); *Innovus Prime, LLC v. Panasonic Corp.*, No. 12-660, 2013 WL 3354390, at *4-5 (N.D. Cal. July 2, 2013) ("[U]nconditional covenants not to sue are equivalent to non-exclusive licenses. Under federal law, there is no substantive difference between an unconditional covenant not to sue and a non-exclusive license."); Robert A. Matthews, Jr., 5 ANNOTATED PATENT DIGEST § 35:32.50 (2024) ("As a promise not to sue a party for patent infringement, a 'covenant not to sue' has the same legal effect as a nonexclusive or 'bare' license 'to the recipient of the covenant.' Thus, courts treat the two, 'covenant not to sue' and a 'nonexclusive' license, as referring to the same scope of granted rights.").

Courts do not merely recite this principle; they back it up. Courts have found that a covenant not to sue exhausts patent rights just like a license, *e.g.*, *TransCore*, 563 F.3d at 1276-77; provides a defense to infringement claims just like a license, *e.g.*, *Securus Techs. Inc. v. Glob. Tel\*Link Corp.*, 676 F. App'x 996, 997-98 (Fed. Cir. 2017), runs with the patent against successor patentees just like a license, *e.g.*, *Energy Innovation Co., LLC v. NCR Corp.*, No. 18-3919, 2018 WL 7050840, at *4 (N.D. Ga. Nov. 29, 2018); *Innovus Prime*, 2013 WL 3354390, at *7; *V-Formation, Inc. v. Benetton Grp. SpA*, No. 02-2259, 2006 WL 650374, at *8 (D. Colo. Mar. 10, 2006); and affects calculation of disputed royalties just like a license. *E.g.*, *Prism Techs.*, 849 F.3d at 1370. Courts look unkindly on litigants seeking to avoid the consequences of licensing by claiming they granted a covenant not to sue. *See, e.g.*, *Therasense, Inc. v. Becton, Dickinson & Co.*, No. 04-2123, 2008 WL 2323856, at *4 (N.D. Cal. May 22, 2008) (finding "most unconvincing" the argument that a covenant not to sue is not a license); *V-Formation*, 2006 WL 650374, at *9 (party "barely" avoided sanctions for arguing that a covenant not to sue is not a license). A covenant not to sue walks like a license, swims like a license and quacks like a license; it is a license. The Rothschild Entities themselves have used the terms interchangeably. *See supra* at 5. The admission that Mr. Rothschild and Patent Asset Management have unfettered rights to grant covenants not to sue does not save standing, as plaintiff apparently intended. To the contrary, it destroys any hope of it.

C. **Plaintiff Cannot Make Up a New Meaning of the Term "Covenant Not to Sue"**

Although it is unwilling to say so directly, plaintiff appears to argue that, in agreements executed by Mr. Rothschild or Patent Asset Management, the words "covenant not to sue" do not have their accepted and understood legal meaning, *see supra* § III.B, but instead represent only an agreement by

Mr. Rothschild to *instruct* his subsidiary companies not to bring certain infringement cases. Docket No. 33 at 2:8-11. Under plaintiff's apparent interpretation, the recipient of a covenant not to sue would receive not a defense to infringement claims but, presumably, a separate claim for breach of contract against Mr. Rothschild himself should one of the Rothschild Entities bring a claim for infringement. *See id.* Plaintiff submits no evidence to support any claim that anyone has ever interpreted a covenant not to sue in this fashion, nor any reason to imagine that anyone would ignore decades of legal precedent and the "fixed and established usage and custom of the trade or industry" to do so.[3]

Even plaintiff itself does not follow this interpretation: in other litigation, plaintiff recently relied on the standard and accepted interpretation of a covenant not to sue. Counts I and II of Valve's second amended complaint seek declarations that a patent is invalid and unenforceable. *See* Ex. 70 at 11-12. Seeking to dismiss those claims, the Rothschild defendants noted that "the Global Settlement and License Agreement ('GSLA') between Plaintiff and Mr. Rothschild includes a covenant not to sue," and "[t]hat covenant not to sue, in and of itself, completely divests this Court of subject matter jurisdiction over Counts I and II of the SAC." Ex. 80 at 5:8-11. The Rothschild defendants supported this claim by quoting *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1346 (Fed. Cir. 2010), which stated that a "covenant not to sue for patent infringement divests the trial court of subject matter jurisdiction over claims that the patent is invalid, because the covenant eliminates any case or controversy between the parties." Ex. 80 at 5:15-18. Against Valve, plaintiff and the other Rothschild defendants adopted the standard understanding of a covenant not to sue: it quacks like a license, providing a defense to infringement claims, thus obviating declaratory judgment claims for invalidity. *See id.* § II.A. Plaintiff cannot now use a new interpretation for this litigation to avoid the implications of its admission.

---

[3] *S. Pac. Transp. Co. v. Santa Fe Pac. Pipelines, Inc.*, 74 Cal. App. 4th 1232, 1244 (Cal. Ct. App. 1999). The universality of this rule precludes any worry about choice of law. The Valve license chose Texas law (Ex. 69 § 11.1); in Texas, "the meaning to which a certain term or phrase is most reasonably susceptible is the one which [is] so regularly observed in place, vocation, trade or industry so 'as to justify an expectation that it will be observed with respect to a particular agreement.'" *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 768 (Tex. 2018) (quoting Restatement (Second) of Contracts § 222(1)). The GNOME license chose Florida law (Ex. 72 § 12); in Florida, "language used 'should be interpreted as reasonable persons, knowledgeable about the business or industry, would likely interpret them—not some strained interpretation put forth by the drafter.'" *NCP Lake Power, Inc. v. Fla. Power Corp.*, 781 So. 2d 531, 537 (Fla. Dist. Ct. App. 2001) (quoting *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1096 (Fla. Dist. Ct. App. 1999)).

## CONCLUSION

Plaintiff's supplemental filing confirms its lack of standing before this Court. Plaintiff presented no evidence to rebut Discord's fulsome submissions, and even admitted that both Leigh Rothschild and Patent Asset Management have unfettered rights to grant "a covenant not to sue" covering any patent held by any "subsidiaries under the control of PAM." Plaintiff's claim that a covenant not to sue differs from a non-exclusive license fails as a matter of law, and so its admission seals its own grave.

For the reasons stated above and in Discord's motion, reply, and oral argument, the Court should dismiss this action for lack of standing.

Date: May 30, 2024

Respectfully submitted,

Matthew S. Warren (State Bar No. 230565)
Erika H. Warren (State Bar No. 295570)
Francesca M. S. Germinario (State Bar No. 326208)
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
24-703@cases.warrenlex.com

*Attorneys for Defendant Discord Inc.*